<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        Case No. 1:21mj3115
                                       Cleveland, Ohio
 4              Plaintiff,             April 6, 2021

 5         vs.

 6    JOSHUA GLOWACKI,

 7              Defendant.

 8
                        TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE THOMAS M. PARKER
                 UNITED STATES MAGISTRATE JUDGE
10

11         PRELIMINARY HEARING AND DETENTION HEARING
                   HELD VIA VIDEOCONFERENCE
12


13
      APPEARANCES:
14

15    For the Government:      Office of the U.S. Attorney
                               Northern District of Ohio
16                             By:  Michael A. Sullivan, Esq.
                               Suite 400
17                             801 Superior Avenue, West
                               Cleveland, Ohio  44113
18                             (216) 622-3977
                               michael.a.sullivan@usdoj.gov
19


20
      For the Defendant:       Friedman & Nemecek
21                             By:  Eric C. Nemecek, Esq.
                               Suite 650
22                             1360 East Ninth Street
                               Cleveland, Ohio  44114
23                             (216) 928-7700
                               ecn@fanlegal.com
24

25
</pre>

1

2

3    Court Reporter:             Lori Ann Callahan, RMR-CRR

                                         United States District Courthouse

4                                     Room 568

                                         2 South Main Street

5                                     Akron, Ohio  44308

                                         (330) 252-6022

6

7

8

9

10

11

12

13

14

15    Proceedings recorded by mechanical stenography from a

16   digital audio recording; transcript produced by

    computer-aided transcription.

17

18

19

20

21

22

23

24

25

                    P R O C E E D I N G S

                           -  -  -

1           THE CLERK:  The case before the court is 21mj3115,

United States of America versus Joshua Glowacki.

           THE COURT:  Good morning, everyone.

           Counsel, if you would, please, indicate

appearances for today's record.

           MR. SULLIVAN:  Good morning, Judge.  On behalf of

the United States, Michael A. Sullivan.

           Also present on the call today is Special Agent

Monica Hantz from the FBI.

           THE COURT:  How do you spell Agent Hantz's last

name?

           MR. SULLIVAN:  H-a-n-t-z.

           THE COURT:  Thank you.

           MR. NEMECEK:  Good morning, Your Honor.  Eric

Nemecek on behalf of the defendant, Joshua Glowacki.

           THE COURT:  Good morning, Counsel.

           Good morning, Ms. Hantz.

           Good morning, Mr. Glowacki.  "Glowacki," I should

say.

           SPECIAL AGENT HANTZ:  Good morning.

           THE DEFENDANT:  Good morning.

           THE COURT:  Mr. Glowacki, are you able to hear

what we are saying so far?

1            THE DEFENDANT:  Yes, I am, Your Honor.

2            THE COURT:  If you do run into any issues with

3    your video or audio connections, please find a way to signal

4    that to us.  We will stop the hearing immediately if that

5    occurs.  It's essential that you be able to fully

6    participate.

7                Do you understand what I'm saying?

8            THE DEFENDANT:  Yes, I do, Your Honor.

9            THE COURT:  All right.  We also have participating

10   today our Pretrial Services Officer Travis Jennings.

11               Officer Jennings has prepared a report of pretrial

12   services.

13               Have counsel each had an opportunity to review

14   that report?

15           MR. SULLIVAN:  I have, Judge.  Thank you.

16           MR. NEMECEK:  Judge, I have -- I have not received

17   the report.  I wasn't present at the initial appearance last

18   week and I don't believe it was forwarded over as of yet.  I

19   can take a look at it.  If someone would like to send it to

20   me quickly, I can take a look at that.

21           THE COURT:  Jaclyn will send you a copy now.

22               In a moment I will ask you whether your nonreceipt

23   of that report up to this moment in any way affects your

24   desire to go forward today.  It's essential that the defense

25   be fully prepared, so if you feel like you need more time to

1    review what's in that report, I will give you whatever time

2    you need.

3            MR. NEMECEK:  Thank you, Judge.

4            THE COURT:  All right.  We are on the record today

5    for a preliminary hearing per the defendant's request on the

6    charge in the complaint that's been filed in this action.

7            The preliminary hearing will be conducted in

8    accordance with Rule 5.1 of the Federal Rules of Criminal

9    Procedure.

10           The purpose of that hearing is to simply allow the

11   court to determine whether there is probable cause to

12   support the charges in the complaint.

13           Mr. Nemecek, will you, the defense, be going

14   forward with the preliminary hearing?

15           MR. NEMECEK:  Yes, Your Honor.

16           THE COURT:  We are also on the record for a

17   hearing on the government's motion for detention.  That

18   hearing will be conducted in accordance with the

19   requirements of the United States Bail Reform Act.

20           The purpose of that hearing is to allow the court

21   to determine whether there are any conditions or combination

22   of conditions that could be put into a bond order that would

23   reasonably assure the appearance of the defendant at future

24   proceedings and that would reasonably assure the safety of

25   other persons and the community in the event Mr. Glowacki

1    were to be released on bond.

2          As we begin, I am going to ask Mr. Sullivan to

3    state for the record what the charge or charges are in the

4    complaint, and also to state the associated penalties.

5          MR. SULLIVAN:  Good morning, Judge.  The complaint

6    charges Mr. Glowacki with one count of receipt/distribution

7    of visual depictions of minors engaged in sexually explicit

8    conduct.  That's in violation of 18 U.S. Code Section

9    2252(a)(2).

10          That normally carries a penalty of up to 20 years

11    with a minimum mandatory term of 5 years.  Based on

12    Mr. Glowacki's prior conviction, he may be subject to the

13    increased penalties of the minimum mandatory 15 years and a

14    maximum of 40 years.

15          It also carries up to a $250,000 fine and up to

16    lifetime supervised release, with a minimum term of five

17    years' supervised release.

18          In addition, there's a $100 special assessment,

19    and then the $5,000 special assessment pursuant to the

20    Justice for Victims of Trafficking Act.

21          THE COURT:  All right.  Thank you, Mr. Sullivan.

22          And, Mr. Glowacki, you previously did receive a

23    copy of the complaint with the attached affidavit; is that

24    correct?

25          THE DEFENDANT:  I did, Your Honor.

LORI A. CALLAHAN, RMR, CRR      (330) 252-6022

1          THE COURT:  Have you had a chance to review those

2    with Attorney Nemecek?

3          THE DEFENDANT:  Not with the attorney, sir.  I

4    haven't been able to speak with him for a while now.

5          THE COURT:  Mr. Nemecek, do you need time to meet

6    with your client to review the content of the pretrial

7    services report and to discuss the contents of the complaint

8    and otherwise prepare for today's hearing?

9          MR. NEMECEK:  I don't believe so, Your Honor.

10   Mr. Glowacki, when he was initially detained, he was, I

11   think, placed on some sort of preventative watch, which

12   meant that I wasn't able to reach him for a couple days.

13         But I don't believe that -- that's going to impact

14   our ability to go forward today.

15         The same thing with the presentence -- or the

16   pretrial services report.  I had a chance to review that

17   just now, and I don't believe additional time would be

18   needed in order to go forward today.

19         THE COURT:  Well, Mr. Glowacki, please do

20   understand, sir, that you do have a constitutional right to

21   be represented by counsel at every stage of the proceedings.

22   It's my understanding that you have retained the services of

23   Attorney Nemecek and that he is here today serving as your

24   legal counsel.

25         First, do you understand your right to an

1    attorney?

2              THE DEFENDANT:  I do, Your Honor.

3              THE COURT:  And do you understand that Mr. Nemecek

4    is here today serving as your lawyer?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  As we go through this hearing today,

7    you are entitled to speak to counsel whenever you feel the

8    need to do that.  And because we are operating in a Zoom

9    environment, we can put you in a breakout room where you and

10   your lawyer could speak privately.

11             So if you feel the need to speak to counsel at any

12   point during the hearing, all you need to do is tell me that

13   and we will take a break so that you can do so.

14             Do you understand that?

15             THE DEFENDANT:  I do, Your Honor.

16             THE COURT:  Do you feel the need to speak to your

17   lawyer now as we begin?

18             THE DEFENDANT:  It might be helpful, Your Honor,

19   just to cover some things.

20             THE COURT:  All right.  We'll take a brief break

21   to allow the defense to do that, and then we'll come back on

22   the record as soon as Mr. Nemecek signals that he is done

23   with that session.

24        (Recess had.)

25             THE COURT:  We can go back on the record.

1          Mr. Glowacki and counsel, you've had an

2     opportunity to confer privately.  Are the defendants -- or

3     is the defense, I should say, ready to proceed with today's

4     hearings?

5          MR. NEMECEK:  Yes, Your Honor.

6          THE COURT:  All right.  We are using

7     videoconferencing for this procedure today.  Is there any

8     objection to the use of video from the defense?

9          MR. NEMECEK:  No, Your Honor.

10          THE COURT:  Mr. Glowacki, can you confirm that you

11     have no objection to appearing for today's hearings by way

12     of video?

13          THE DEFENDANT:  I have no objection, Your Honor.

14          THE COURT:  All right.  Thank you.

15          Let me cover a few more background things.  This

16     is a hearing at which the government may call witnesses.

17     The defense has the right to cross-examine witnesses.  It

18     also has the right to present evidence.

19          Mr. Glowacki, as a part of that evidence, you can

20     be called to testify, and you have the right to do that.

21     But it's important, however, that you cannot be required to

22     testify, because you do have the right to remain silent.

23     And, as I mentioned, you have the right to consult with your

24     attorney at any time.

25          The rules of evidence that preclude the court's

1    receipt of hearsay evidence do not apply in a hearing like

2    this.

3           Both sides can proceed in whole or in part by way

4    of proffer, which is a description or providing a

5    description of the evidence rather than calling the actual

6    witnesses and submitting documents and so forth.

7           If -- the evidence and examinations today will be

8    limited to the issues of probable cause and detention.  The

9    court is not in a position to entertain any motions to

10   suppress evidence, nor can I consider any argument that

11   evidence was obtained unlawfully.

12          We'll proceed in the following way:  The

13   government will first present any and all evidence it has in

14   support of both the probable cause issue and the issue of

15   detention, and then the defense will present its evidence.

16          After that, the court will hear arguments from

17   counsel if they wish to provide them.

18          Because of the nature of the charge in this case,

19   there is a presumption for detention.  So let me explain

20   that.

21          What that means, Mr. Glowacki, is that Congress,

22   in passing the Bail Reform Act, has determined that under

23   certain kinds of cases, and this is one of them, there is a

24   presumption that no condition or combinations of conditions

25   would reasonably assure the safety of other persons and the

1    community, or would reasonably assure the appearance of the

2    defendant.

3         The defendant has a right to rebut that

4    presumption.  In order to do so, you must present some

5    evidence to establish that bond conditions could indeed

6    reasonably assure your appearance at future proceedings and

7    reasonably assure the safety of the community.

8         The fact that there's a presumption for detention

9    does not in any way affect the fact that you are presumed

10   innocent of the charge that's been filed against you in this

11   case.

12        And the defense -- the government, rather, retains

13   the overall burden to prove by clear and convincing evidence

14   that bond conditions cannot reasonably assure the safety of

15   the community or can prove by a preponderance of the

16   evidence that bond conditions will not reasonably assure the

17   appearance of the defendant at future proceedings.

18        Now, with those things having been said, we are

19   now ready to proceed.

20        Mr. Sullivan, what evidence would you like to

21   submit on behalf of the United States, both on the issues of

22   probable cause and detention?

23        MR. SULLIVAN:  Thank you, Judge.

24        We would like to submit the affidavit in support

25   of the criminal complaint, the criminal complaint and the

1     pretrial services report.  And we feel that those -- those

2     establish both probable cause and justification for

3     detention.

4              THE COURT:  Is there any objection by the defense

5     to the court's receipt of the report of pretrial services?

6     Obviously, the complaint with attached affidavit are already

7     a part of the record.

8              MR. NEMECEK:  No objection to the receipt of the

9     pretrial services report, Your Honor.

10             THE COURT:  All right.  It will be received.

11             Mr. Sullivan, do you wish to submit any other

12     evidence or proffer any additional facts?

13             MR. SULLIVAN:  No, thank you, Judge.

14             THE COURT:  All right.  Mr. Nemecek, how would you

15     like to proceed on behalf of the defense?

16             MR. NEMECEK:  Your Honor, if I could, I'd like to,

17     I guess, question the agent involved in the case relative to

18     the probable cause issue, Agent Hantz.

19             THE COURT:  She's here.  Agent Hantz, you may be

20     sworn in.  If you'll raise your right hand, I'll have the

21     courtroom deputy administer the oath.

22             MONICA HANTZ, of lawful age, a witness called by

23     the Defendant, being first duly sworn, was examined and

24     testified as follows:

25                   CROSS-EXAMINATION OF MONICA HANTZ

                 LORI A. CALLAHAN, RMR, CRR       (330) 252-6022

1    BY MR. NEMECEK:

2    **Q.**  Good morning, Agent Hantz.

3          THE COURT:  All right, Mr. Nemecek, go ahead.

4    BY MR. NEMECEK:

5    **Q.**  Good morning, Agent Hantz.

6    **A.**  Good morning.

7    **Q.**  I'd like to start talking a little bit about the

8    investigation in this case.

9          Now, the affidavit references that there was a

10   particular website on the dark web that was involved where

11   the child pornography was made available; is that correct?

12   **A.**  That's correct.

13   **Q.**  Okay.  Can you explain what the dark web is?

14   **A.**  It's like we can -- the best way -- easiest way to

15   describe would be like a separate part on the Internet that

16   the only way to access it will be using a browser such as

17   Tor.

18   **Q.**  Okay.  And so how does that dark web, I guess, differ

19   from the regular Internet that most people would use?

20   **A.**  So first you have to have a special browser to be able

21   to access those URLs or those addresses.  And then you have

22   to know where to go, because there's no good thing like such

23   as Google that we have [unintelligible] to be able to search

24   and find this website.

25   **Q.**  And does the specific browser that you would need or

1  the Tor browser that you would need in order to access the

2  dark web, does it provide any sort of, I guess, anonymity to

3  users?

4  **A.**  It certainly does.

5  **Q.**  Okay.  And what sort of anonymity does it provide or

6  how does it do that?

7  **A.**  So Tor, it bounces your connection through multiple

8  servers hiding your true identity or true location.  So you

9  could be browsing in Tor from Ohio but you're going to go

10  through servers potentially in Germany or Russia.  You keep

11  bouncing until it goes to the destination address or what

12  they call [unintelligible] in between.

13  **Q.**  Okay.  And I guess focusing specifically on the darknet

14  site that was at issue in this case, what would a user need

15  to do in order to gain access to that website or whatever

16  the content is that is contained on that website?

17  **A.**  All they need to do is go to that URL or that

18  [unintelligible] address.  The landing page or the front

19  page is loaded with these images.

20  **Q.**  Okay.  But in order to gain access, would they need to

21  create any sort of account or make any sort of payment?

22  **A.**  Just -- you can get additional access and get even more

23  images or videos if you make that payment.

24  **Q.**  Okay.  And I think the affidavit in this case, if I'm

25  not mistaken, indicates that there was evidence that an

1    e-mail address associated with Mr. Glowacki had purchased

2    bitcoin, correct?

3    **A.**   Correct.

4    **Q.**   And had sent that bitcoin to an address that is

5    associated with this website?

6    **A.**   That's correct.

7    **Q.**   Okay.  Now, the affidavit I believe indicates that

8    Mr. Glowacki registered an account at a virtual currency

9    exchange in November of 2019.

10       How did you become aware of that?

11   **A.**   It came through leads and [unintelligible] that came to

12   us.

13   **Q.**   Okay.  And the same question as it relates to the two

14   payments that were made from that address, you learned that

15   through leads and --

16   **A.**   No, that was confirmed -- once we reach out to the

17   [unintelligible] currency provider, they provide a record

18   associated to Mr. Glowacki and that's where we identify

19   those other payments.

20   **Q.**   Okay.  And during the investigation in this case, did

21   you do anything to identify the location of where, I guess,

22   the account for that dark web site was created or where the

23   bitcoin was purchased from?  Meaning like the IP address or

24   anything else?

25   **A.**   So we definitely can see that associated to the bitcoin

1    transaction and the purchase that came through the provider.

2    **Q.**  Okay.  So there was, I guess, confirmation of a

3    particular IP address that was used to create an account?

4    **A.**  That's correct, yes.

5    **Q.**  Okay.  And what did that, I guess, information reveal?

6    **A.**  Didn't give us much [unintelligible] associated to cell

7    phone, so today many of these providers do not for cell

8    phone IPs because they are shared by many users.

9    **Q.**  Okay.  And in terms of this dark web website that we're

10   talking about, the darknet site here, you mentioned that, I

11   guess, an individual could get access to additional material

12   if they created an account and paid money; is that correct?

13   **A.**  If they -- if they send a payment, yes.

14   **Q.**  Okay.  And so once somebody would send a payment or

15   create an account to access the site, how would they -- how

16   would the material or the contents of the website, how would

17   they come into, I guess -- how would they be able to view

18   that?  Would it just get sent out from the website, or would

19   they have to actually log on to the site and view it?

20   **A.**  That depends on a case-by-case or side-by-side basis.

21   On this particular instance, we did not pay for additional

22   access.

23   **Q.**  Okay.

24   **A.**  So I cannot talk about how the machination on this

25   website actually worked.

1    **Q.**  Okay.  And so we know that Mr. Glowacki -- or, I guess,

2    as the affidavit indicates, Mr. Glowacki would have sent

3    payment to this particular website back in December of 2019,

4    correct?

5    **A.**  Yes.  That's correct.

6    **Q.**  Okay.  And prior to executing the search warrant, was

7    there any evidence that Mr. Glowacki ever accessed the

8    website?

9    **A.**  No.

10   **Q.**  Okay.  And prior to the search warrant, was there any

11   evidence that he ever downloaded any child pornography from

12   that website?

13   **A.**  No.

14   **Q.**  During the investigation, did you ever download any

15   child pornography from Mr. Glowacki?

16   **A.**  No, we did not.

17   **Q.**  Okay.  Are you aware of any -- whether any other law

18   enforcement officers ever downloaded any child pornography

19   from Mr. Glowacki?

20   **A.**  Not to my knowledge.

21   **Q.**  And are you aware of whether anybody else, any other

22   users or anyone else downloaded any child pornography from

23   Mr. Glowacki?

24   **A.**  Not to my knowledge.

25   **Q.**  And is there any evidence that Mr. Glowacki ever sent

1    child pornography or made those materials available to

2    anybody else?

3    **A.**  No, not on my -- not so far.

4            THE COURT:  This feels like we're doing a

5    discovery conference here.

6            MR. NEMECEK:  No.  I apologize, Your Honor.  I'm

7    just trying to go through the affidavit.  I'll move it

8    along.

9            THE COURT:  Well, the affidavit doesn't speak in

10   any way, shape or form about any allegation that

11   Mr. Glowacki sent materials to others or did any

12   peer-to-peer sharing of files.  That isn't part of the case.

13           MR. NEMECEK:  Well, he's charged with receipt and

14   distribution.  I mean, that's what --

15           THE COURT:  Well, he's charged with possession as

16   well.

17           MR. NEMECEK:  I understand.  But the receipt and

18   distribution, I guess the point that I was getting at was

19   with the making it available, sending it to anybody would go

20   to the distribution of porn- --

21           I'll move along, Your Honor.

22   BY MR. NEMECEK:

23    **Q.**  When the search warrant was executed in this case,

24   would you say that Mr. Glowacki was cooperative with

25   investigators?

1    **A.**   I will say so, yes.

2    **Q.**   Okay.  So he didn't make any effort to interfere with

3    the execution of the search warrant?

4    **A.**   No, he did not.

5    **Q.**   And was he arrested at the time --

6    **A.**   No.

7    **Q.**   -- that the search warrant was executed?

8    **A.**   He was with us, but he wasn't -- he was there

9    voluntarily.  He wasn't in cuffs or -- he was just sitting

10   in the truck with us.

11   **Q.**   Okay.  And are you aware how he came into custody as it

12   relates to this case?  Did he voluntarily surrender?

13   **A.**   We executed the search warrant, and upon arrival we

14   call everybody out, and he was brought in to us.

15   **Q.**   Okay.  So later, after the search warrant, days later

16   is when he was brought in for --

17   **A.**   That's correct, yes.

18              MR. NEMECEK:  No further questions, Judge.

19              THE COURT:  Remind me, did Mr. Glowacki appear by

20   summons or by arrest?

21              MR. SULLIVAN:  He was arrested, Your Honor.

22              THE COURT:  Thank you.

23              Do you wish to examine, Mr. Sullivan?

24              MR. SULLIVAN:  No, thank you, Judge.

25              THE COURT:  All right.  Mr. Nemecek, do you have

1    any further questions for Special Agent Hantz?

2            MR. NEMECEK:  No, Your Honor.  Thank you.

3            THE COURT:  All right.  Do you have any other

4    evidence or factual information you wish to present or

5    proffer?

6            MR. NEMECEK:  Your Honor, just argument, I guess,

7    as it relates to the issue of detention.  Beyond that, no

8    witnesses or evidence, Judge.

9            THE COURT:  All right.  The court is going to find

10   for the record, based on the fact that the defense is going

11   to argue the issue of detention only, that there is probable

12   cause to support the charge in the complaint.  The case will

13   be bound over to the grand jury for further proceedings.

14           Mr. Glowacki, what that means is that the case

15   will be presented to the grand jury.  The grand jury will

16   then make its own probable cause determination.  It may be

17   on the charge in the complaint.  It may be on additional

18   charges, depending on how the government presents the

19   evidence to the grand jury.

20           If the grand jury finds probable cause, then they

21   would issue a document known as an indictment and the case

22   would proceed.  If the jury -- grand jury does not find

23   probable cause, the case would either be dismissed or

24   modified in some way.  But the matter will be bound to the

25   grand jury.

1          With those things having been said, let's move on

2     to the arguments of counsel regarding the issue of

3     detention.

4          Mr. Sullivan, the government bears the burden of

5     proof.  How do you wish to argue the matter?

6          MR. SULLIVAN:  Judge, thank you.  I'll just make a

7     few brief comments.

8          As you indicated in the beginning, there is a

9     statutory presumption for detention, and the government's

10    opinion, or it's our position that that presumption has not

11    been rebutted at all during this hearing.  There's been no

12    evidence offered that's rebutted that presumption.

13         While in this case the evidence is that

14    Mr. Glowacki used a darknet site trying to mask his identity

15    to download child pornography, also as evidenced from the

16    complaint as well as the pretrial services report,

17    Mr. Glowacki has a prior conviction for child pornography

18    offenses in the state court.  He was currently out on

19    release, post-release control or probation because he was

20    still under that case where he was convicted of child

21    pornography offenses.

22         In addition, Mr. -- which that also increases,

23    again, his sentence potentially up to a 15-year mandatory

24    minimum, which I believe would certainly give Mr. Glowacki

25    an incentive to plea.

1          In addition, as the pretrial services report

2     indicates, Mr. Glowacki has suffered from depression and

3     some mental health issues, and indeed, after he was -- the

4     search warrant, he was hospitalized briefly because of fear

5     on the part of his parents that he would harm himself.

6          So there's been nothing -- nothing offered that

7     would rebut the presumption, and the government feels that

8     Mr. Glowacki should be detained pending trial.

9          THE COURT:  All right.  Thank you.

10          Mr. Nemecek, how do you wish to argue on behalf of

11     the defense?

12          MR. NEMECEK:  Thank you, Your Honor.  Just

13     briefly.

14          As noted in the pretrial services report,

15     Mr. Glowacki is 23 years old.  He's a lifelong resident of

16     northeast Ohio.  He's got strong ties to the community.

17          Prior to his arrest in this case, he was residing

18     with his mother and father.  Both of them have indicated

19     their continuing support for him.

20          He does have a history, as the government noted,

21     of anxiety and depression.  However, he, you know, on his

22     own volition, has been engaged in counseling at Advanced

23     Psychotherapy Services for over three years at this point.

24          I have spoken with Mr. Glowacki's counselors.

25     They've indicated that he's consistently reported and that

1    he's demonstrated, you know, commitment to the treatment

2    process.

3             I understand that there was a prior conviction

4    that he had.  However, as it relates to that case, there is

5    no, I guess, allegations or suggestions that he, you know,

6    attempted to abscond or failed to appear at any required

7    court proceedings.

8             The same with probation, no allegations that he

9    ever failed to report to the PO.

10            So he's been compliant throughout the course of

11   his supervision on this case -- or on that case.

12            As testified to in this hearing, he didn't do

13   anything in an effort to obstruct the investigation.  He was

14   cooperative with officers and he voluntarily

15   self-surrendered.

16            So I would submit that there are conditions of

17   release that can ensure his appearance at court, as well as

18   the safety of the community, such as restricting/prohibiting

19   Internet access, you know, at the residence, as well as any

20   sort of electronic monitoring the court would deem

21   appropriate here.

22            I would submit that with certain conditions in

23   place, there would not be a concern regarding his ability

24   to -- or his determination to, I guess, abscond or commit

25   offenses during the pendency of this case.

1          Thank you, Judge.

2          THE COURT:  Mr. Nemecek, do you have background

3    information on Mr. Glowacki's hospitalization?  How long was

4    he hospitalized?  Did he do that --

5          MR. NEMECEK:  My understanding is that he reached

6    out to his counselor and indicated that he was struggling,

7    you know, shortly after the search warrant was executed in

8    this case, understandably.  And out of an abundance of

9    caution, they, you know, had suggested that he go in on a

10   72-hour psychiatric hold.

11         So they, you know, explained that to Mr. Glowacki.

12   He was compliant and understood.  They contacted EMS.  They

13   came out.  And he was, I guess, placed on a 72-hour hold and

14   released, I believe, on Monday, the day before he was -- he

15   made arrangements to surrender on this case.  I think it was

16   last Monday.

17         THE COURT:  Okay.  And I'm not clear from Officer

18   Jennings' report whether Mr. Glowacki resides by himself or

19   with his parents.  Maybe your client can clarify.

20         THE DEFENDANT:  I do currently reside with my

21   parents, Your Honor.

22         THE COURT:  Do they live at the Ralph Avenue

23   address, or is that your own residence?

24         THE DEFENDANT:  That is their residence.

25         THE COURT:  Pardon?

1          THE DEFENDANT:  That is their residence, Your

2     Honor.

3          THE COURT:  Were you living at that address, say,

4     earlier in the year up until the time of the arrest?

5          THE DEFENDANT:  I was, Your Honor.

6          THE COURT:  It appears that the search warrant was

7     executed on March 23.  The complaint was filed on March 29.

8     It would appear that the initial appearance occurred -- took

9     place the next day, on the 30th.

10         So am I understanding this correctly, Mr. Nemecek,

11    that Mr. Glowacki was released from the hospital on or about

12    the 29th?

13         MR. NEMECEK:  Last Monday, Your Honor.  I don't

14    recall the particular date offhand.  But it was last Monday

15    he was released.  The 29th.

16         THE COURT:  All right.  Well, the court is

17    obligated, as I mentioned, to make a decision on the issue

18    of detention under the requirements of the Bail Reform Act.

19    That involves an examination of the factors set forth in the

20    statute.  And let's go through those now.

21         The government seeks detention under 3142(f)(1),

22    and particularly subparagraph -- pardon me, it's under

23    3142(e)(2), and then subparagraph (3)(E).

24         How's that for an alphabet soup arrangement?

25         But the court makes a decision on the issue of

1    detention under the factors set forth in 3142, subsection

2    (g).  So the court is required to consider the nature and

3    circumstances of the offense charged, including whether the

4    alleged violation or statutory violation has a minor victim.

5    And that's the allegation in this case, is that there's a

6    minor victim involved in the possession, receipt or

7    distribution of child pornography.

8            The court is required to consider the weight of

9    the evidence against the person.  That is not the weight of

10   the evidence on the underlying charge, but the weight of the

11   evidence that the -- that bond conditions cannot reasonably

12   assure the appearance of the defendant or reasonably assure

13   the safety of the community or other persons.

14           As I look at that issue, I'm struck by the fact

15   that both the government and the defense have provided the

16   court with minimal arguments, and they instead seem to

17   assert that the facts of the case and the allegations

18   involved in Mr. Glowacki's history as it's been revealed

19   through the pretrial services report of Officer Jennings, do

20   reflect some concerns about whether the defendant would

21   likely be able to comply or likely would comply with the

22   conditions as set forth in a bond here.

23           The government seems to point to the fact that the

24   defendant was already convicted of a similar type of offense

25   in state court just two years ago and was under court

1    supervision at the time of the alleged offense in this case,

2    which tend to -- tends to suggest that he's not willing to

3    comply with the requirements of court supervision.

4         The court must look at the history and

5    characteristics of the person, including character, physical

6    and mental condition, family ties, employment, financial

7    resources, community ties, past conduct, substance abuse

8    history and so forth.

9         There is evidence before the court of a mental

10   health history that is a matter of some concern to the

11   court.

12        The defendant has put forth evidence showing that

13   he's got family ties and lives with his parents.  There's

14   evidence of parental support for him and the opportunity to

15   reside again with his parents.  Those are important factors.

16        One of the factors the court must explicitly

17   consider is whether at the time of the current offense, the

18   person was on probation, parole or other type of release for

19   another similar type of offense -- another type of offense.

20        So the court must evaluate all those factors and

21   then make a determination on the issue of detention.

22        The court has received the report of Pretrial

23   Services Officer Jennings.  Officer Jennings has done what

24   he always does, and that is to compile a history of the

25   defendant, family ties history and so forth.  It confirms

1    largely what has been proffered by the defense, and contains

2    additional information about the defendant's educational

3    background, employment history and the like.

4            The record does indicate that Mr. Glowacki has not

5    been employed since July of last year.  Given the pandemic,

6    that's not a shocking occurrence.  Many people have come to

7    court and have not been able to hold jobs during this period

8    of time.

9            The report does confirm the mental health history

10   of the defendant and shows confirmation of that history.

11           There is no history of substance abuse reported to

12   the court.

13           And there's one prior criminal conviction.

14           Notwithstanding that amount of information,

15   Officer Jennings recommends to the court that bond not be

16   granted in this case.  And he -- his conclusion is there are

17   no conditions or combinations of conditions that could be

18   put into a bond order that would reasonably assure the

19   safety of the community or assure the appearance of the

20   defendant.

21           So let me turn to my conclusions on these issues.

22           First on the issue of whether the defendant has

23   rebutted the presumption for detention.  The law is quite

24   clear that the defense must come forward with some evidence

25   to show that bond conditions could be successfully put in

LORI A. CALLAHAN, RMR, CRR       (330) 252-6022

1    place.

2            The fact that the defendant was -- or is able to

3    return to his parents' house, does have family ties, does

4    have family support, and was indeed not even arrested on the

5    day of the search warrant, but was permitted to turn himself

6    in, that combination of facts is sufficient evidence to

7    rebut the presumption for detention.  Because it is some

8    evidence that the defendant could comply with bond

9    conditions.

10           On the issue of whether bond conditions could

11   reasonably assure the appearance of the defendant, the fact

12   that the defendant has turned himself in and the government

13   has not really argued that the defendant is a risk of flight

14   other than positing that anyone who faces a potential

15   lengthy period of incarceration poses a risk of flight,

16   there's no specific evidence that the defendant poses a risk

17   of flight.

18           So I conclude the government has not met its

19   burden on the issue of attempting to show by a preponderance

20   of the evidence that the defendant poses a risk of flight.

21           Which gets us down to the main issue at hand, and

22   that is whether bond conditions could reasonably assure the

23   safety of other persons and the community.  The government

24   seems to argue that it's Mr. Glowacki's own welfare and

25   well-being that should be of primary concern to the court.

1          And I'll indicate, quite frankly, that is a matter

2     of great concern to the court.  The court sees this as a

3     case in which the defendant faces a charge.  He's presumed

4     innocent of that charge.  The defendant has every right to

5     stand in court and defend himself on that offense.

6          Whether he is likely to be found guilty of that

7     offense or not is not a matter that goes into a bond

8     evaluation.  But certainly Mr. Glowacki is a human being who

9     has dignity and a right to come to court and to defend

10    himself.  And the last thing that I would want to see is a

11    person who would harm himself.

12         The fact that he voluntarily went and sought

13    mental health treatment, voluntarily submitted to the

14    72-hour watch and, according to the proffered evidence, is

15    continuing with his mental health treatment suggests to me

16    that he does have a desire to protect himself and to take

17    care of his interests and would not likely harm himself

18    here.

19         So I conclude that that's not a basis for

20    detention.

21         So then the only other issue at hand is whether

22    the defendant would likely reengage in similar conduct to

23    what's been alleged in this case or what occurred in the

24    2019 case and thereby subject the community to potential

25    harm.

1       I conclude that with the appropriate management of

2  Internet connections and some level of accountability, those

3  issues can be reasonably handled through bond conditions.

4       So I do conclude the government has not met its

5  burden to show by clear and convincing evidence that bond

6  conditions cannot reasonably assure the safety of the

7  community.

8       That's a long way of saying, Mr. Glowacki, that I

9  am going to take a chance and release you on bond in this

10  case.  And I'm going to take a few moments now and review

11  with you the conditions of bond.  So let me pull up those

12  files.

13       You are going to be released on a $50,000

14  unsecured bond.  What that means is you are not required to

15  post any cash in order to be released, but you do face a

16  potential to forfeit up to $50,000 if you do not return to

17  court when required or otherwise comply with the conditions

18  of your release.

19       Do you understand that?

20       THE DEFENDANT:  I do, Your Honor.

21       THE COURT:  All right.  And let's look at what the

22  conditions of release will be.  Some of them are standard

23  conditions that are required to be in every bond order, and

24  they are as follows:

25       You must not violate any federal, state or local

1    laws while on release.

2            You must cooperate in the collection of a DNA

3    sample if it's authorized by law and if it's requested from

4    you.

5            You must advise the court or pretrial services

6    office or supervising officer in writing before making any

7    change of residence or telephone number.

8            Under the terms of the condition I am going to

9    establish, I am going to require you to reside with your

10   parents at the address on Ralph Avenue.  Therefore, you are

11   not permitted by the court's order to make any change in

12   your residence address unless you have prior approval from

13   pretrial services or the court.

14           And that approval would obviously entail a

15   situation where, say, your parents wanted to move.  So I'm

16   not restricting them from moving.  If their house is for

17   sale, for example, and they are getting ready to leave, they

18   can do that.  But you have to verify that you are still

19   residing with them.

20           Do you understand what I'm saying?

21           THE DEFENDANT:  I do, Your Honor.  They're about

22   to move residences.  I'm not --

23           THE COURT:  They are.  But your residence is going

24   to be controlled by --

25           THE DEFENDANT:  [Unintelligible].  Okay.  I

1  understand, Your Honor.

2          THE COURT:  All right.  Now, you must appear in

3  court when required and, if convicted, must surrender to

4  serve any sentence that the court may impose.

5          Do you understand that?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  All right.  You are going to be

8  subject to supervision by U.S. Pretrial Services in

9  Cleveland.  And before we get off here today, Agent

10  Jennings -- or Officer Jennings, rather, will probably get

11  your phone number so that he can arrange to have a pretrial

12  officer contact you upon your release.

13          There is going to have to be some verification of

14  the suitability of your residence for pretrial release, so

15  you probably won't get released today, but it should be

16  within another day or two once pretrial services completes

17  its work.

18          You are to surrender any passport if you have one,

19  and you are prevented and restricted from obtaining a

20  passport if you don't have one.  And you may not obtain any

21  international travel documents.

22          Now, your travel is going to be restricted to the

23  Northern District of Ohio.  You may not leave the northern

24  half of this state without prior permission from your

25  pretrial officer or the court.

1          The court is going to order that you undergo a

2     psychiatric and mental health evaluation, and that you

3     follow through with any treatments that may be found to be

4     necessary, including taking any medication that may be found

5     to be necessary.

6          Do you understand that?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  During this time of your release, you

9     may not possess a firearm, destructive device or other

10    weapon.

11         You may not -- strike that.

12         If you have any contact with law enforcement

13    during the time of your release, you are to report that

14    contact as soon as possible after it occurs to your pretrial

15    officer.

16         The court is going to indicate that you are

17    subject to complying with whatever terms of your probation

18    already exist in Cuyahoga County.  So I'm not in any way

19    removing any of those conditions and, in fact, I am adding

20    as our conditions that you comply with whatever conditions

21    may already exist in Cuyahoga County.

22         THE DEFENDANT:  I understand, Your Honor.

23         THE COURT:  During the time of your release, you

24    will be placed on home detention with location monitoring at

25    the discretion of your pretrial officer.

LORI A. CALLAHAN, RMR, CRR     (330) 252-6022

1      Now, home detention means this:  You, generally

2   speaking, are required to be there.  But you are allowed to

3   leave the home if you get a job and you can go to work.  You

4   are allowed to leave home to come to court proceedings.  You

5   are allowed to leave home to attend to medical treatments,

6   religious services, to meet with your lawyer.  But

7   otherwise, generally speaking, you must be at home.

8      And any job that you would take must not involve

9   direct contact with minors.  And if you're not seeking

10  employment right now, then that is pretty much a moot point.

11      But you understand what I'm saying?

12      THE DEFENDANT:  I do, Your Honor.

13      THE COURT:  Now, when I say "location monitoring

14  at the discretion of your pretrial officer," they may

15  determine at the outset that they are not going to apply an

16  ankle bracelet, but they do have the discretion under this

17  court's order to monitor your location if they have any

18  reason to think that would be appropriate.

19      Do you understand what I'm saying?

20      THE DEFENDANT:  I do, Your Honor.

21      THE COURT:  And that's part of the reason why

22  they'll need to verify the suitability of your residence.

23      Now, here is a key part of your release.  And

24  this, again, will have to be verified with your parents.

25      You are prohibited from accessing any computer,

LORI A. CALLAHAN, RMR, CRR      (330) 252-6022

1    Internet service provider, bulletin board system or any

2    other public or private computer network or service at any

3    location, including at any work locations, without prior

4    written approval of your pretrial services officer or the

5    court.

6              That means you may not utilize a telephone that

7    has Internet connection capability.  If that's the sort of

8    telephone you've had in the past, you are not going to be

9    able to use that in the future.

10             It's my understanding that the government has

11   seized the phone that you had at the time of the search

12   warrant.  If you need a new telephone, it is going to have

13   to be a flip phone or something that does not contain

14   Internet access.

15             And your parents will have to verify that they're

16   not going to keep Internet access in the residence.  If they

17   can't verify that, then they are going to have to

18   alternatively verify that they are going to password protect

19   any computer or phones that they have, and they'll have to

20   verify with pretrial services that those passwords will have

21   been changed prior to you returning home and that they will

22   not give you those passwords.

23             Do you understand what I'm saying?

24             THE DEFENDANT:  I do, Your Honor.

25             THE COURT:  Do your parents have computers in the

1      residence?

2                  THE DEFENDANT:  Yes.  My mother does currently

3      work from home.  And there's a computer upstairs.  Well, I

4      don't know how many have actually been returned yet, as

5      every computer was taken during the search and seizure.

6                  THE COURT:  All right.  Well, this is going to

7      take a bit of effort to verify that you cannot get on the

8      Internet.

9                  Do you understand that?

10                 THE DEFENDANT:  I understand.

11                 THE COURT:  I'm a little surprised that you had

12     Internet access upon your Cuyahoga County release.  So you

13     just need to understand that this is not state court.

14                 Do you understand what I'm saying?

15                 THE DEFENDANT:  I do, Your Honor.

16                 THE COURT:  If I get -- if I get one report that

17     you've had any contact with the Internet, then your bond is

18     going to be revoked and you'll be taken back into custody.

19                 Now, I am putting on a part of the conditions of

20     release that you have no contact with minors.  There's a

21     fairly detailed description of what that means.  But that is

22     going to be a condition of the court's release.

23                 All right.  Now, I've covered a lot of different

24     issues.  Let me seek questions first from defense counsel.

25                 MR. NEMECEK:  I don't have any questions at this

1    time, Your Honor.

2             THE COURT:  Mr. Sullivan, do you have any

3    questions on behalf of the United States?

4             MR. SULLIVAN:  Judge, I have no questions, but I

5    do have an objection.  I would ask you to stay the

6    imposition of the order because we will be appealing, but

7    I'd ask for a stay for us to have the opportunity to appeal

8    this to the district judge.

9             THE COURT:  I don't believe a stay is warranted

10   under the circumstances, but you certainly may appeal.

11            Officer Jennings, you undoubtedly have some

12   additional points I need to clarify.

13            PROBATION OFFICER:  No, Your Honor, I think you

14   have clarified with him for him to be held and we'll check

15   out the residence and we'll notify the court after the

16   residence has been verified.

17            MR. SULLIVAN:  Also, Judge, I just want to just be

18   clear.  So you're denying us the stay to seek the review

19   from a district judge, you're denying that at this point?

20            THE COURT:  That's correct.

21            MR. SULLIVAN:  Okay.

22            THE COURT:  I'm not -- I'm not denying you the

23   right to seek a review, I'm just denying --

24            MR. SULLIVAN:  No, I understand.

25            THE COURT:  -- the stay for that purpose.

                    LORI A. CALLAHAN, RMR, CRR      (330) 252-6022

1          MR. SULLIVAN:  So you're ordering him to be

2     released while we're reviewing it?  You're not allowing us

3     to seek appeal while he's in custody, but you're ordering

4     him to be released while we're seeking that appeal?  I just

5     want to make that clear.

6          THE COURT:  Well, I think that's fairly clear.

7          MR. SULLIVAN:  Okay, great.  Thank you.

8          THE COURT:  However, as indicated, the court is

9     not authorizing the immediate release of the defendant.

10    Pretrial services will need to interact with Mr. Glowacki's

11    parents to find out with some level of detail what their

12    Internet accessing capability is in the home and how they

13    would propose to go about modifying passwords and this

14    defendant's ability to access the Internet through any

15    device in that residence.

16          And, Mr. Glowacki, just to be clear, the

17    restriction I'm putting upon you specifically precludes you

18    from going to a Verizon store, an AT&T store or something

19    like that and getting a new phone that you would be able to

20    gain Internet access with.

21          Do you understand that?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  I think that covers everything that

24    needs to be addressed for purposes of the record.

25          If there's nothing further from the United States

1    or the defense, that should conclude today's proceeding.

2              MR. SULLIVAN:  Nothing from the United States.

3              THE CLERK:  Judge, would you ask if he could sign

4    those for him?

5              THE COURT:  Yes, let's see that.

6              Mr. Glowacki, typically if you were in the

7    courtroom right now, you would be reviewing these bond

8    documents as I went over them, and then you'd have an

9    opportunity to sign them and receive a set.  Obviously, with

10   us not being in the courtroom, we cannot do it that way.  So

11   I would like your permission to send the bond documents to

12   Attorney Nemecek with the request that he review them,

13   verify that they say what I've said and then sign them on

14   your behalf and return a set to me.

15             He will then get a set of the bond documents to

16   you as soon as you are released.

17             Do we have your permission to proceed that way?

18             THE DEFENDANT:  I accept, Your Honor.

19             THE COURT:  All right.  Thank you, everyone.  Have

20   a good rest of your day.

21        (Thereupon, the proceedings were concluded.)

22

23

24

25

1                         C E R T I F I C A T E

2

3         I certify that the foregoing is a correct transcript,

4    to the best of my ability, transcribed from a digital

5    audio recording from the record of proceedings in the

6    above-entitled matter.

7

8                   s/Lori A. Callahan
                    Lori Ann Callahan, RMR-CRR
9                   U.S. District Court, Suite 568
                    2 South Main Street
10                  Akron, Ohio  44308
                    (330) 252-6022
11                                      - - -

12                            I N D E X

13   **WITNESS:**                  **CALLED BY:**              **PAGE:**

14   MONICA HANTZ              Defendant                   12

15                          *  *  *  *  *

16   **EXAMINATION:**                                      **PAGE:**

17   CROSS-EXAMINATION OF MONICA HANTZ                     12
     BY MR. NEMECEK
18
                            *  *  *  *  *
19

20

21

22

23

24

25