IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 1:21-cr-258 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | |
| JOSHUA GLOWACKI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPRESS, OR, IN THE ALTERNATIVE, MOTION FOR
A HEARING PURSUANT TO *FRANKS V. DELAWARE***

Now comes the Defendant, Joshua Glowacki (hereinafter "Glowacki"), by and through

undersigned counsel, Friedman & Nemecek, L.L.C., and pursuant to the Fourth Amendment to the

United States Constitution, and Rules 12(b)(3) and (c) of the Federal Rules of Criminal Procedure,

hereby respectfully moves this Honorable Court to issue an Order suppressing and excluding all

evidentiary items seized pursuant to the March 19, 2020 search warrant that was executed at 2205

Ralph Avenue, Cleveland, Ohio (hereinafter "TARGET PREMISES") on March 23, 2021.

Alternatively, Defendant respectfully requests a hearing pursuant to *Franks v. Delaware,* 438 U.S.

154 (1978).  Reasons in support of the instant request are set forth more fully in the Memorandum

in Support, which is attached hereto and incorporated herein by express reference.

Respectfully submitted,

/s/ Eric Nemecek
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemececk, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
E: ecn@fanlegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion was filed by CM/ECF on the 25th day of June, 2021, which will send a notification of such filing electronically to the following: Michael A. Sullivan, Assistant United States Attorney, 801 Superior Avenue, Cleveland, OH 44113.

Respectfully submitted,

/s/ Eric Nemecek_____
ERIC C. NEMECEK
Counsel for Defendant

<u>**MEMORANDUM IN SUPPORT**</u>

**I.**     <u>**STATEMENT OF THE CASE**</u>

On or about October 20, 2020, in response to an administrative subpoena, FBI Special Agent Monica Hantz (hereinafter "Agent Hantz") received records from Coinbase, a popular and lawful online platform used to send, receive, and exchange cryptocurrency. The records indicated that on December 24, 2019, a Coinbase account allegedly registered to Glowacki transferred Bitcoin to bitcoin address "15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ" (hereinafter "**BTC Address**"), which was alleged to be associated with a dark web site that advertised access to child pornography material.

Thereafter, Agent Hantz utilized DARKBLUE[1], a commercially available platform that allows users to search a secure scrape of the known dark web. *See* FBI Serial 3, attached hereto as Exhibit "A." Agent Hantz obtained screenshots from the scrapes available in DARKBLUE. *Id*. These screenshots purportedly show multiple sites on the dark web advertising access to child pornography material in exchange for Bitcoin payment to **BTC Address**. *Id*. Agent Hantz recorded these findings in FBI Serial 3. Over the next several months, Agent Hantz continued her investigation into Glowacki and authored more than 35 FBI Serials.

On March 19, 2021, Agent Hantz obtained a warrant authorizing the search of the TARGET PREMISES and the seizure of various computers, devices, and materials evidencing sexual exploitation of children in violation of 18 U.S.C. § 2251 (*i.e.*, sexual exploitation of children), 18 U.S.C. § 2252(a)(2)A) and (b)(1) (*i.e.*, receipt or distribution of child pornography), and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (*i.e.*, possession of child pornography). As

---

[1] According to FBI Reports provided to the defense, DARKBLUE searches the entire known dark web in a secure and anonymous manner, looking for extremist content which is then stored indefinitely. *See* Ex. "A."

aforementioned, the search warrant was executed on March 23, 2021. During the course of the search, officers seized numerous electronic items from the Glowacki's residence, some of which were subsequently determined to contain child pornography materials.

On April 15, 2021, a federal Grand Jury returned a two (2) count Indictment against Glowacki alleging the following offenses, *to wit*: one (1) count of Receipt of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violations of 18 U.S.C. § 2252(a)(2); and one (1) count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(5)(B).

As discussed more fully *infra*, the search warrant failed to establish probable cause to believe that evidence of criminal activity would be located in Glowacki's residence. Moreover, counsel maintains that the Affidavit was based on incomplete and misleading information, there was an insufficient nexus between the place to be searched and the evidence being sought, and the evidence relied on in the search warrant Affidavit was stale. Accordingly, counsel submits that suppression of all evidentiary items seized pursuant to the March 23, 2021, search warrant is necessary and warranted in this case. Alternatively, counsel requests a hearing, pursuant to *Franks*, *supra*.

## II.    <u>LAW AND ARGUMENT</u>

The Fourth Amendment of the United States Constitution provides that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Const. amend. IV. "Whether the police had probable cause to search determines whether a search conducted pursuant to a warrant comports with the Fourth Amendment." *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006); *see also Warden v. Hayden*, 387 U.S. 294, 301–02 (1967); *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir.2003). To properly issue a search warrant, the Fourth

4

Amendment requires "the issuing magistrate ... simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008); *see also United States v. Smith*, 510 F.3d 641, 652 (6th Cir.2007)(determination of whether probable cause was sufficiently established requires a "totality of the circumstances" approach).

The Affidavit in support of a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *McPhearson*, 469 F.3d at 524. The Affidavit must also set forth particularized facts demonstrating "a fair probability that evidence of a crime will be located on the premises of the proposed search." *Id*. This requires both "a nexus between the place to be searched and the evidence sought" and a reliance on timely, not stale, evidence. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc) (internal quotation omitted).

The search warrant issued on March 19, 2021, for the TARGET PREMISES lacked probable cause because the supporting Affidavit was based on incomplete and misleading information, there was an insufficient nexus between the place to be searched and the evidence being sought, and the evidence relied on in the search warrant Affidavit was stale. Accordingly, all evidence obtained as a result of the search warrant must be suppressed and excluded.

## A. THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO JUSTIFY A SEARCH OF GLOWACKI'S RESIDENCE DUE TO THE OMISSION OF MATERIAL FACTS AND INFORMATION.

Generally, there is a presumption of validity with respect to an Affidavit filed in support of a search warrant. However, a search warrant is invalid if "the supporting [A]ffidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *Franks*, 438 U.S. 154; *see also United States v. Stone*, No. 15-5434, 2017 WL 218883, at *3 (6th Cir. Jan. 19, 2017); *United States v. Ardd*, No. 2:16-CR-20094-SHM, 2017 WL 1382548, at *5 (W.D. Tenn. Apr. 18, 2017). Likewise, a search warrant is invalid if "an affiant intentionally omitted information in an [A]ffidavit, which is critical to the probable cause determination." *Id*.

"If the defendant is able to show deliberate falsity or reckless disregard for the truth, those portions of the affidavit are set aside, and the remaining content is analyzed to determine if it supports probable cause. Thus, the offending information must be essential to a probable cause finding." *Id*. In other words, to invalidate a search warrant, two things must be shown: (1) "that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Shaffer*, 781 F. App'x 404, 409 (6th Cir. 2019), *quoting United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

In the matter *sub judice*, the Affidavit claimed that there was probable cause to believe that evidence of Glowacki's receipt, possession and/or production of child pornography would be found at the TARGET PREMISES.  Said belief was predicated on the assumption that Glowacki had transferred Bitcoin to a particular BTC Address in December of 2019 in exchange for access

to a particular site on the dark web that advertised child pornography.  Specifically, the Affidavit

states that on December 24, 2019, Glowacki made two (2) Bitcoin transfers to **BTC Address**,

which has been associated with **Target URL** (*i.e.*, **childsivo3n3xzei.onion**) that advertises access

to 'terabytes of child porn.'" *See* S.W. Affidavit at ¶26, attached hereto as Exhibit "B."  The

Affidavit further noted that:

> [o]pen searches for information associated to **BTC Address** revealed that
> this bitcoin address has been previously reported in the public website
> www.bitcoinabuse.com as follow: "TOR site advertising for child
> exploitation videos. Below is the ad US $ 15 - After payment to the bitcoin
> address number: 15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ write the
> transaction number write to e-mail: video-child@secmail.pro we will send
> you access."

*Id*. at ¶28.

In essence, the Affidavit claimed that there was probable cause to search Glowacki's

residence based on the following alleged facts, *to wit*: (1) Glowacki transferred Bitcoin to **BTC**

**Address**; (2) **BTC Address** is associated with **Target URL**; (3) **Target URL** advertises access to

child pornography in exchange for $15 USD worth of Bitcoin; and (4) once $15 worth of Bitcoin

is transferred, access will be provided via email. *Id*. at ¶26-28.

### 1.    Material Information Omitted from Search Warrant Affidavit

#### i.    *Information regarding BTC Address and Target URL*

The Affidavit fails to mention that while **BTC Address** is allegedly associated with **Target**

**URL**, **Target URL** is not the only website that **BTC Address** is associated with. In fact, according

to FBI Serial 3[2], the **BTC Address** "was seen advertised in multiple sites…" *See* Exhibit "A." FBI

Serial 3 goes on to identify three (3) sites that DARKBLUE marked as child pornography,

---

[2] FBI Serial 3, which is dated November 5, 2020, was also authored by Agent Hantz. *See* Ex. "A."

including **Target URL**, which have been associated with **BTC Address**. Neither FBI Serial 3 nor the Affidavit state that **BTC Address** is exclusively associated with child pornography sites, nor do they offer any evidence demonstrating that **BTC Address** was not also associated with lawful sites or activities.

Despite the fact that **BTC Address** was also associated with other websites and activities, Agent Hantz chose to focus exclusively on **Target URL** throughout the Affidavit.[3]  By neglecting to mention these other affiliations, the Affidavit gave the impression that the investigation concluded that Glowacki's transfer of Bitcoin to **BTC Address** was payment intended to give him access to the specific **Target URL**. In reality, however, Agent Hantz had no information or evidence – other than **BTC Address**' alleged affiliation with **Target URL** – to support the conclusion that the Bitcoin Glowacki transferred was intended to provide him access to **Target URL** or any other site on the dark web.  What is more, prior to executing the search warrant, Agent Hantz had no evidence that Glowacki ever accessed, viewed, distributed or received child pornography from any site on the dark web, including **Target URL**.

### ii.  *Information Regarding BTC Payments*

The Affidavit also fails to provide critical information regarding the December 24, 2019, payments that Glowacki made that undermines the probable cause determination.  While the Affidavit notes that Glowacki made two (2) payments to **BTC Address**, it fails to provide details regarding the timing or value of the transfers. A review of the Coinbase records from Glowacki's

---

[3] In explaining the facts supporting probable cause, the Affidavit states that Glowacki's Coinbase account was "identified as sending bitcoin payments to an address associated with *a dark net website* that advertises Child Sexual Abuse Material ("CSAM")." *See* S.W. Affidavit at ¶22, attached hereto as Exhibit "B." (Emphasis added).  The foregoing language reinforces the notion that the payment was intended to provide access to a specific dark net website that contained child pornography materials.

account confirm that there was an initial transfer of 0.00252 BTC (then valued at $18.27 USD), and a second transfer of 0.00252 BTC (then valued at $18.29 USD) to **BTC Address** approximately 26 minutes later. *See* Coinbase Records attached hereto as Exhibit "C."[4]

Again, as set forth in the Affidavit, **Target URL**'s advertisement indicated that users were required to provide Bitcoin payment in the amount of $15.00 USD.  A review of the Coinbase records[5] confirms that both of the transfers made from Glowacki's account to **BTC Address** were over $18.00 for a total of $36.56. Nothing in the Affidavit suggests that to gain access to **Target URL** and/or child pornography two (2) payments totaling $36.55 USD must be sent to **BTC Address**. To the contrary, two (2) back-to-back payments of approximately 0.0025 BTC – or $18.00 U.S.D. each – are entirely inconsistent with the advertisement discussed in the search warrant Affidavit. In this regard, the omitted information is significant insofar as it undermines the entire premise of the Affidavit – namely, that Glowacki paid for a subscription to **Target URL** for the purpose of accessing and viewing child pornography.

### iii. Information Regarding Access to Website(s)

The Affidavit failed to disclose additional evidence relating to Glowacki's email account that would have further undermined the contention that the payments were intended to provide him access to the **Target URL** or other dark net websites offering child pornography.  The Affidavit notes that **Target URL**'s advertisement directed users to send the transaction ID associated to the payment to a particular email address, which would then send the user access to the website. *See* S.W. Affidavit at ¶30(f), attached hereto as Exhibit "B." Likewise, FBI Series 3

---

[4] Due to formatting issues, Exhibit "C," Coinbase Records, will be provided to the Court in a different format at a upcoming date and time.

[5] It is undisputed that Agent Hantz obtained the Coinbase records prior to filing the Affidavit in support of the search warrant.

references instructions, which were contained on a dark net website associated with **BTC Address**, for how users would be provided access to the website:

> [a] small payment will immediately be sent back from our website to your BTC Wallet, if the transfer has confirmed in the blockchain. This amount is your password.  Example: you received BTC 0.00035678, your password will be the 35678.  This is a widely used method.  Our server see the BTC income and send the small amount immediately back to your wallet.  It's fully automated.

*See* FBI Serial 2, attached hereto as Exhibit "D."

Again, Glowacki's account did not transfer 0.007 BTC, nor did his account receive any incoming transfers from **BTC Address** – or any other bitcoin address – on December 24, 2019, or any other date. Moreover, although Agent Hantz received records from Glowacki's email provider pursuant to a Court Order, the Affidavit omits any reference to the records, presumably because they fail to establish that he ever sent or received an email to/from video-child@secmail.pro providing transaction details or otherwise requesting or receiving access to **Target URL** or any other dark net website advertising child pornography materials.

### 2.      The Omissions were Material

The foregoing omissions are material, and critical to the determination of probable cause. The Affidavit provides no evidence that Glowacki ever accessed, viewed, or distributed child pornography.  Thus, the entire Affidavit is predicated on assertions that Glowacki transferred Bitcoin in exchange for a subscription to a dark net website that was advertising access to child pornography. This belief was bolstered by the contention that **BTC Address** was associated with a particular website offering access to child pornography, *to wit*: **Target URL**. Evidence that **BTC Address** was affiliated with other sites – and presumably other lawful activity – undermines the assumption that payments were transferred to **BTC Address** in exchange for access to child pornography.  Likewise, the inconsistencies with the payment amounts and means of obtaining

10

access to the website – which were omitted from the Affidavit – further undermine the conclusion that the payments were intended to provide Glowacki with access to any dark net website advertising child pornography materials.

### 3. Information was Intentionally or Recklessly Omitted

As aforementioned, a search warrant is invalid if "the supporting [A]ffidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth," and/or if "an affiant intentionally omitted information in an [A]ffidavit, which is critical to the probable cause determination." *Franks*, 438 U.S. 154; *see also Stone*, 2017 WL 218883 at *3; *Ardd*, 2017 WL 1382548 at *5. "Omissions count as false statements if they are 'designed to mislead or made in reckless disregard of whether they would mislead the [issuing judge].'" *United States v. Colkley*, 899 F.2d 297, 301 (1990).

Here, Agent Hantz was aware of the omitted information prior to submitting the Affidavit. The Coinbase produced records were produced in response to the administrative Subpoena on or about October 20, 2020. Subsequently, Agent Hantz wrote FBI Serials 2 and 3 on November 5, 2020. Thus, it is clear that Agent Hantz was in possession of the information heretofore discussed several months before submitting her Affidavit in support of the search warrant on March 19, 2021. Accordingly, it is reasonable to conclude that the information was knowingly or recklessly omitted from the Affidavit.

Taken as a whole, it is clear that the information that **BTC Address** has been associated with multiple websites in addition to **Target URL**, the lack of evidence that Glowacki sent payment to **BTC Address** with the intention to access **Target URL**, and/or that the Bitcoin transfers made from Glowacki's account do not match the amount or procedure identified in the

alleged child pornography advertisements, are critical omissions. Moreover, it is undisputed that Agent Hantz was aware of this information at the time she submitted the Affidavit, as evidenced by the notations in the FBI Serials 2 and 3 as well as the documents received from Coinbase during the course of her investigation. Because the omitted information was critical to the probable cause determination necessary for the issuance of said search warrant, all evidence seized pursuant thereto must be suppressed and excluded from trial. At the very least – and as discussed more fully *infra* – the facts and circumstances of this case warrant a *Franks* hearing.

**B.  THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO CONCLUDE THAT GLOWACKI ENGAGED IN THE CRIMINAL CONDUCT THAT WAS THE BASIS FOR THE SEARCH WARRANT AND/OR THAT EVIDENCE OF SAID CONDUCT WAS LIKELY TO BE FOUND AT HIS RESIDENCE.**

As aforementioned, it is undisputed that there was no conclusive evidence that Glowacki accessed, viewed, received, distributed or produced any child pornography material prior to the execution of the search warrant. And, in light of the material omissions discussed *supra*, there is no basis to conclude that the Bitcoin transfers provided Glowacki with access to such materials.

The Second Circuit Court of Appeals' decision in *United States v. Falso,* 544 F.3d 110 (2d Cir 2008), provides pertinent guidance on this issue. Falso was prosecuted for child pornography offenses. The charges stemmed from an undercover investigation into a particular website that facilitated the dissemination of child pornography. The homepage for the website displayed eleven (11) images of child pornography and also advertised additional child pornography at a different site that was only provided after payment was made.

An FBI agent paid $99.00 for a one-month subscription and received an email from the website, which provided the information necessary to access the membership-only website. A subsequent forensic examination of the website revealed "several possible subscribers along with

12

the e-mail addressed and other information." *Id*. at 114. The FBI then subpoenaed subscriber information for these e-mail addresses, which included a specific Yahoo email account. *Id*. Records provided by Yahoo revealed that Falso had an active account that matched the log-in name and email address identified by the forensic examination. The agent also determined that the residential address associated with Falso's Yahoo account had active internet service during the period immediately preceding the warrant request. *Id*.

The foregoing information was set forth in an Affidavit that was submitted in support of the search warrant. The Affidavit stated that, based on the FBI investigation and forensic examination, "it appear[ed]" that Falso "either gained access or attempted to gain access to the [non-member] website" containing child pornography. *Id*. The district court ultimately granted the Government's search warrant request and authorized the agent to search Falso's residence and seize evidence related to child pornography offenses. Law enforcement officers discovered child pornography in Falso's home. The officers also conducted an interview with Falso, wherein he admitted to obtaining child pornography from the internet. *Id*.

Prior to trial, Falso moved to suppress the evidence, arguing that the search warrant failed to establish probable cause. Specifically, Falso claimed that the presence of his email address on the prohibited website was an insufficient basis for probable cause in the absence of any allegations in the Affidavit that he was a member or subscriber to the website, or that the overriding purpose of the website was the trading of child pornography. *Id*. at 115. The district court denied Falso's Motion and he entered a conditional plea to the pertinent charges.

The Second Circuit disagreed with the district court's probable cause determination. The Court noted that the Affidavit only alleged that Falso appeared to gain access or attempt to gain access to the non-membership website displaying images of child pornography. *Id*. at 121.

According to the Court, even if a permissible inference could be drawn that Falso accessed the website, there was no information suggesting that he ever accessed, viewed, or downloaded child pornography. *Id*. The Court reasoned that a finding of probable cause necessitated some cognizable evidence to conclude that Falso actually accessed the website containing child pornography, and that no such evidence existed in the search warrant Affidavit.

As in *Falso*, *supra*, the instant Affidavit failed to establish that Glowacki ever accessed, viewed, or downloaded child pornography material from the **Target URL** or any other dark net website. Agent Hantz's Affidavit merely suggests that Glowacki may have made a payment to a **BTC Address**, that was affiliated, *inter alia*, with a website providing access to child pornography. Even if a permissible inference could be drawn that the transfers were directed to the **Target URL**, there was no information suggesting that Glowacki ever accessed, viewed, or downloaded child pornography from said website. Therefore, there is no cognizable evidence to conclude that Glowacki actually accessed **Target URL** or any other website containing child pornography, as is required to establish probable cause.

Additionally, the Affidavit does not indicate what **Target URL** looked like in December 2019, when Glowacki would have been allegedly accessing the site. Instead, the Affidavit only asserts what **Target URL** looked like on October 27, 2020 – almost a year later. Probable cause should not be based on an assumption that **Target URL** looked the same in October 2020 as it did in December 2019, particularly in light of the Affidavit's admission that in October 2020, the **Target URL** contained a different BTC Address than the one that Glowacki transferred Bitcoin to in December of 2019. *See* S.W. Affidavit at ¶30, attached hereto as Exhibit "B."

Based upon the foregoing, it is clear that the Affidavit failed to establish probable cause to justify the issuance of the search warrant.  As a result, any and all evidence seized pursuant to the search warrant must be suppressed and excluded from trial.

## C.   THE AFFIDAVIT FAILED TO ESTABLISH A SUFFICIENT NEXUS BETWEEN THE PLACE TO BE SEARCHED AND THE EVIDENCE TO BE SEIZED.

In order to establish probable cause to justify the issuance of a search warrant, the Affidavit "must contain particularized facts demonstrating a fair probability that evidence of a crime will be located on the premises of the proposed search." *McPhearson*, 469 F.3d at 524. This requires "a nexus between the place to be searched and the evidence sought." *Carpenter*, 360 F.3d at 594. In other words, the Affidavit must suggest "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought" and not merely "that the owner of property is suspected of crime." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also McPhearson*, 469 F.3d at 524. Further, "a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause." *McPhearson*, 469 F.3d at 524; *see also United States v. Savoca*, 761 F.2d 292, 297 (6th Cir.1985).

In the case at bar, the search warrant Affidavit identifies the TARGET PREMISES as a single-family home. *See* S.W. Affidavit at ¶32, attached hereto as Exhibit "B." The Affidavit further states that the IP address of 108.94.129.177 was assigned to TARGET PREMISES on November 5, 2020. *Id*. ¶ 35. In an effort to link Glowacki's alleged misconduct to the TARGET PREMISES, the Affidavit states that, "[b]etween November 9, 2020, and January 2, 2021, Glowacki's Email was accessed from IP address 108.94.129.177 multiple times." *Id*. at ¶34. Moreover, the Affidavit notes that Glowacki was observed using a snowblower and a snow shovel in the driveway of TARGET PREMISES. *Id*. ¶33.

However, simply accessing an email account from an IP address assigned to TARGET PREMISES does not establish that the things being searched for (here, evidence of child pornography) will be located at TARGET PREMISES. Nowhere in the Affidavit does Agent Hantz state that Glowacki's email address was used to send, receive, or view child pornography material. In fact, the Affidavit fails to allege that Glowacki used his email address for any wrongdoing. All that the Affidavit alleges is that Glowacki created the email address in August of 2013, used the email address to register an account on Coinbase (a popular and legal cryptocurrency exchange platform), and accessed the email account from IP address 108.94.129.177 multiple times. Respectfully, evidence linking Glowacki's email address to the IP address at TARGET PREMISES does not provide a sufficient nexus between the alleged crimes and the place to be searched (*i.e.*, Glowacki's residence).

Moreover, the records provided by Coinbase contain the IP address associated with each and every trade and/or transfer made by Glowacki's Coinbase account. *See* Exhibit "C." The two (2) transfers from Glowacki's account to **BTC Address** on December 24, 2019, list the IP addresses as "2600:387:0:805::bb" and "2600:1700:b4b1:9260:91c6:d904:11b2:4db4." *Id*. Notably, neither of these IP addresses are "108.94.129.177" – the IP address listed in the search warrant Affidavit.

Furthermore, the records provided by Coinbase contain transactions that stem from November 16, 2019, through October 20, 2020.  Importantly, not a single one of these transactions is associated with IP address "108.94.129.177." *Id*. In other words, the device(s) and/or server(s) used to transfer cryptocurrency to/from Glowacki's Coinbase account are different from the device(s) and/or server(s) set forth in the Affidavit in an attempt to establish a nexus between Glowacki's alleged wrongdoing and the TARGET PREMISES. Again, this is an insufficient nexus

and does not demonstrate a fair probability that evidence of a crime will be located on the premises of the proposed search. Because the Affidavit fails to set forth evidence establishing probable cause to believe that evidence is likely to be located at Glowacki's residence, all evidence seized pursuant to the search warrant must be suppressed and excluded from trial.

The Sixth Circuits addressed a similar issue in *United States v. Lapsins*, 570 F.3d 758 (6th Cir. 2009).  Therein, a law enforcement officer requested a search warrant for Lapsins' residence to look for evidence related to child pornography.  The Affidavit stated that Lapsins was the owner/user of a specific Yahoo! email account that was used to upload images of child pornography to a Yahoo! group and communicate with other members of the group about the images that had been uploaded. *Id*. at 766.  The Affidavit further noted that these uploads originated from an IP address associated with Lapsins' home city. *Id*. While there was no direct evidence that Lapsins used a home computer to access his accounts, the fact that the images were uploaded from a residential cable modem in the city where he lived, combined with the early morning chat, allowed the magistrate judge to make that inference. *Id*. at 766–67. Accordingly, the court determined that the search warrant Affidavit set forth evidence establishing probable cause that images of child pornography would be found in Lapsins' home. *Id*.

The instant matter is distinguishable from *Lapsins*, *supra*, insofar as Agent Hantz's Affidavit does not contain sufficient evidence to link the IP or email addresses mentioned in the Affidavit to any evidence of an alleged crime. In *Lapsins*, the email address was directly linked to the alleged wrongdoing – that is, uploading child pornography from said email address. However, as previously discussed, Agent Hantz's Affidavit fails to allege that Glowacki's email address was used to send, receive, or view child pornography or any other illegal materials. Instead, the

Affidavit asserts that Glowacki used the email address to register his Coinbase account and then later accessed the email address from TARGET PREMISES.

Likewise, the Sixth Circuit determined that there was additional information linking Lapsins to the residence beyond the IP address (*e.g.*, the chats and the early morning hours). Conversely, there are no additional facts in the case at bar that would support an inference that evidence was likely to be located at the TARGET PREMISES. In fact, Agent Hantz's Affidavit does not state that the IP address assigned to TARGET PREMISES (108.94.129.177) was ever associated with Glowacki's Coinbase account or any other alleged wrongdoing, nor are there additional facts to support such an inference.

Furthermore, Agent Hantz's Affidavit does not state that Glowacki used his email address for any reason other than registering a Coinbase account, nor does it state that Glowacki resided at TARGET PREMISES or used a computer located at TARGET PREMISES to send, receive, or view child pornography at the time of the Bitcoin transfers were made (*i.e.*, December 24, 2019). Without demonstrating that any illegal pornographic image(s) have originated or emanated from Glowacki's email account, said email address cannot be used to suggest that image(s) are likely to be found on his computer.

Moreover, the IP address listed in Agent Hantz's Affidavit was not used to purchase a subscription to a known child pornography website, nor was it used to transfer Bitcoin to **BTC Address** (or any other address, for that matter). While the fact that Glowacki accessed his email address from the IP address identified in the Affidavit may contribute to a probable cause determination, that fact, without more, is insufficient to demonstrate that evidence of Glowacki's alleged crimes would be found at the TARGET PREMISES. This is especially true given that the

Affidavit does not state that Glowacki sent, received, or viewed child pornography from his email address.

Accordingly, the search warrant Affidavit does not set forth enough evidence to establish probable cause, and all evidence seized pursuant thereto must be suppressed and excluded from trial.

**D.  THE INFORMATION CONTAINED IN THE SEARCH WARRANT AFFIDAVIT WAS STALE AND THUS INSUFFICIENT TO ESTABLISH PROBABLE CAUSE TO SUPPORT ITS ISSUANCE.**

The Sixth Circuit has previously held that "stale information cannot be used in a probable cause determination. The staleness inquiry depends on the 'inherent nature of the crime.'" *United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009), *quoting United States v. Spikes*, 158 F.3d 913, 923 (6th Cir.1998); *see also* W. LaFave, *Search and Seizure* § 3.7 (3d ed.1996). When analyzing whether information is stale, the reviewing court should consider the following factors:

>    (1) the character of the crime (chance encounter in the night or regenerating conspiracy?);
>
>    (2) the criminal (nomadic or entrenched?);
>
>    (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?); and
>
>    (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Frechette*, 583 F.3d at 378.

Applying the *Frechette* factors to the instant matter, it is clear that the Affidavit failed to establish probable cause to believe that evidence of the crimes identified in the search warrant would be located at the TARGET PREMISES. Agent Hantz's Affidavit contains a copious amount of information regarding the ways in which computers, technology, and the Internet make creating, distributing, and viewing child pornography easier, as well as how computers can record evidence

of these crimes. *See* search warrant Affidavit, ¶7-12, attached hereto as Exhibit "B". However, the Affidavit does not contain any information as to how long computers can store this material or the tendencies of people who view child pornography to either hoard it for an extended period or delete it immediately after viewing.

Likewise, the Affidavit does not provide any statements regarding whether Glowacki's alleged illegal conduct in December of 2019 was ongoing and, if not, why evidence of said offenses would still be found on his device(s) fifteen (15) months later. *Id*. The Affidavit makes no claims as to whether there were any temporal limits on the subscription that Glowacki allegedly purchased to **Target URL**. This is particularly significant in light of the fact that there is no evidence indicating that Glowacki made any subsequent transfers in an attempt to renew his subscription to **Target URL** or to purchase a subscription to a similar dark net website. Thus, if the subscription lapsed after one (1) month, there is no basis to conclude that Glowacki's alleged illegal conduct was ongoing such that evidence was likely to be found fifteen (15) months later. In other words, the inherent nature of the allegations against Glowacki suggests that the fifteen (15) month old evidence, relied on when establishing probable cause, was stale. Special Agent Hantz made no statements or assertions to the contrary in her Affidavit.

Furthermore, Agent Hantz's Affidavit does not clarify whether Glowacki was nomadic or entrenched; in fact, the Affidavit makes no statements about Glowacki's living situation or whereabouts in 2019 (the year the transfers of Bitcoin from Glowacki's Coinbase account to **BTC Address** occurred). Instead, the Affidavit merely asserts that in February of 2021, Glowacki was observed removing snow from the TARGET PREMISES, and that between November 9, 2020, and January 2, 2021, his email was accessed from an IP address assigned to the TARGET PREMISES. *Id*. ¶33-34. Thus, the Affidavit fails to establish whether Glowacki was nomadic at

the time of the allegations, or that he resided at TARGET PREMISES in December of 2019. Absent such information, it cannot be determined if the TARGET PREMISES was a forum of convenience, an operational base, or an unrelated location that was distinct from any alleged wrongdoing.

While it is true that child pornography is not necessarily a fleeting crime, *see id.*, this fact alone does not mean that evidence can never go stale, nor should it be presumed that evidence of child pornography remains on a computer indefinitely. *See, e.g., United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997)("[w]e are unwilling to assume that collectors of child pornography keep their materials indefinitely…"). As is true with any digital evidence, images of child pornography can be easily duplicated, stored, or traded. They are not inherently perishable and may have enduring utility. However, such characteristics cannot and should not be used as an excuse to circumvent probable cause and overlook stale evidence. Accordingly, it should not necessarily be presumed that even if Glowacki sent, received, or viewed child pornography in or around December of 2019, there would be evidence of such conduct at TARGET PREMISES fifteen (15) months later.

Accordingly, the search warrant Affidavit does not set forth enough evidence to establish probable cause, and all evidence seized pursuant thereto must be suppressed and excluded from trial.

**E.  THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE IS INAPPLICABLE IN THIS CASE.**

"Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir.2005),

*quoting United States v. Leon,* 468 U.S. 897, 905 (1984). Nevertheless, the "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *Leon,* 468 U.S. at 922–23, n. 23.

The good faith exception is not without limitation, however. The Sixth Circuit has previously identified four (4) situations in which the exception is inapplicable, *to wit*:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity;
>
> (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role;
>
> (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or
>
> (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*McPhearson*, 469 F.3d at 525.

As discussed *infra*, Agent Hantz's Affidavit is replete with incomplete and/or inaccurate information. Because said information was known prior to submitting the search warrant Affidavit, it is reasonable to conclude that it was knowingly – or, at the very least, recklessly – omitted. *See Franks*, 438 U.S. 154 (holding that within the context of search warrant Affidavits, an omission that is critical to the probable cause determination is equivalent to a falsity). Pursuant to Sixth Circuit's holding in *McPhearson*, *supra*, the good faith exception is inapplicable in this case, and all evidence seized pursuant to the search warrant must be suppressed and excluded from trial.

## F.   A *FRANKS* HEARING IS WARRANTED.

To succeed in a *Franks* hearing, the defendant must make a preliminary showing that Affiant knowingly and intentionally included in the Affidavit, or made with reckless disregard for the truth, a false statement in the warrant affidavit. *Id.* "Omissions count as false statements if they are 'designed to mislead or made in reckless disregard of whether they would mislead the [issuing judge].'" *United States v. Colkley*, 899 F.2d 297, 301 (1990). A *Franks* hearing is required when false statements originated with the Government Affiant or that informants' statements were repeated with reckless indifference to the truth. *United States v. Giacalone*, 853 F.2d 470 (6th Cir. 1988).

Here, the Affidavit omitted that **BTC Address** has been associated with multiple websites in addition to **Target URL**; that there is no of evidence that Glowacki sent payment to **BTC Address** with the intention to make a payment to **Target URL**; and that the Bitcoin transfers made from Glowacki's account do not match the amount or procedure identified in the alleged child pornography ads. These are critical omissions. The Affidavit provides no evidence that Glowacki ever accessed, viewed, or distributed child pornography. Accordingly, the entire Affidavit is predicated on the assumption that Glowacki transferred Bitcoin in exchange for a subscription to a dark net website that was advertising access to child pornography. This belief was based on the contention that **BTC Address** was associated with a particular site offering access to child pornography, *to wit*: **Target URL**.

Evidence that **BTC Address** was affiliated with other sites – and presumably other lawful activity – significantly belies the assumption that payments were transferred to **BTC Address** in exchange for access to child pornography. The legitimacy of Agent Hantz's assumption would have been further undermined had the Affidavit stated that Glowacki's transactions and email

activity were inconsistent with the advertisements on **Target URL** or other similar dark net websites.

Finding such assertions sufficient to establish probable cause would effectively authorize law enforcement officers to search the residence of anyone who ever transferred Bitcoin to **BTC Address** without any additional evidence suggesting that said individuals engaged in criminal conduct. As the Ninth Circuit has previously recognized, courts must be vigilant in their protection of the Fourth Amendment, particularly in light of continuing technological advances, even where the alleged conduct is of an aberrant nature:

> [g]iven the current environment of increasing government surveillance and the long memories of computers, we must not let the nature of the alleged crime, child pornography, skew our analysis or make us "lax" in our duty to guard the privacy protected by the Fourth Amendment.

*United States v. Gourde*, 440 F.3d 1065, 1074 (9th Cir. 2006).

Because Agent Hantz was in possession of this information prior to applying for the search warrant, it is reasonable to conclude that these misstatements and omissions were made intentionally, or at least recklessly, and that they were material to the probable cause determination. If these statements are excised from the Affidavit, the evidence essentially demonstrates that Glowacki transferred Bitcoin payments in December of 2019 to an address that was allegedly associated with some sites on the dark web that advertised access to child pornography. Based upon the foregoing, the undersigned respectfully submits that a *Franks* hearing is both necessary and warranted in this case.

## III.  <u>CONCLUSION</u>

The search warrant Affidavit failed to establish probable cause so as to justify the issuance of a search warrant. As such, any evidence seized pursuant thereto must be suppressed and excluded from trial.

Furthermore, it is evident that the Affidavit contained incomplete, misleading and/or inaccurate information that significantly undermines the probable cause determination.  Had such information been included, there is no basis to conclude that there was probable cause to search Glowacki's residence. At the very least, a *Franks* hearing should be conducted to ascertain whether said omissions affect the validity of the probable cause determination.

**WHEREFORE**, the Defendant, Joshua Glowacki, hereby respectfully requests that this Honorable Court issue an Order suppressing and excluding any and all evidence seized from the TARGET PREMISES on March 23, 2021, as well as any and all fruits of said evidence.  In the alternative, counsel requests that the Court schedule the matter for a Franks hearing to determine whether the material omissions heretofore discussed are sufficient to negate the Magistrate's probable cause determination.

Respectfully submitted,

/s/ Eric Nemecek_____
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, Ohio 44114
P: (216) 928-7700
E: ecn@fanlegal.com