IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 1:21-cr-258 |
| Plaintiff, | ) ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| JOSHUA GLOWACKI, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

Now comes the Defendant, Joshua Glowacki (hereinafter "Glowacki"), by and through undersigned counsel, Friedman & Nemecek, L.L.C., and hereby respectfully provides this Honorable Court with the instant Brief in Reply to the Government's Opposition to Defendant's Motion to Suppress. (Doc. #38).

Respectfully submitted,

/s/ Eric Nemecek_____
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemececk, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
E: ecn@fanlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was filed by CM/ECF on the 30th day of July, 2021, which will send a notification of such filing electronically to the following: Michael A. Sullivan, Assistant United States Attorney, 801 Superior Avenue, Cleveland, OH 44113.

Respectfully submitted,

/s/ Eric Nemecek_____
ERIC C. NEMECEK
Counsel for Defendant

**BRIEF IN REPLY**

I. **LAW AND ARGUMENT**

A. **The Affidavit Does Not Establish Probable Cause to Justify a Search of Glowacki's Residence.**

   1. *Case law relied upon by the Government is distinguishable*

The Government maintains that the Affidavit contains sufficient facts to conclude that there was probable cause to believe that Glowacki committed the identified offenses and that evidence of said crimes was likely to be discovered at the residence. In support of its contention, the Government relies on a series of cases holding that evidence that the defendant had a subscription to a website known to contain child pornography is sufficient to establish probable cause. *See United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009); *United States v. Wagers*, 452 F.3d 534, 538-39 (6th Cir. 2006); *United States v. Paull*, 551 F.3d 516, 519 (6th Cir. 2009).

However, the Government fails to acknowledge the significant factual distinctions between those cases and the matter *sub judice*. For instance, in *Frechette*, *supra*, the Sixth Circuit found probable cause to search a defendant's residence for child pornography offenses based on evidence set forth in the Affidavit establishing that: (1) the defendant purchased a subscription to a child pornography website using PayPal; (2) the PayPal account was registered in the defendant's name with his phone number and home address; (3) the defendant transferred $79.95 directly to a child pornography subscription website through PayPal, which was the exact amount that the website advertised for a subscription. *Frechette*, 583 F.3d at 377. Similarly, the probable cause determinations in *Wagers* and *Paull* were predicated on evidence establishing that the defendants had subscriptions to child-pornography websites at some point during the course of the investigations. *See, e.g., Wagers*, 452 F.3d at 537 (Affidavit referenced billing records for three

3

(3) known subscription-based child pornography websites); *Paull*, 551 F.3d 516, 519 (Affidavit relied on defendant's subscription to known child-pornography websites).

In the case at bar, the Affidavit is devoid of any information demonstrating that Glowacki had a subscription to a child-pornography website. Unlike the defendant in *Frechette*, the instant Affidavit fails to allege that Glowacki transferred money directly to Target URL; rather, the Affidavit merely notes that Glowacki transferred BTC to a bitcoin wallet that was associated with Target URL, among other websites. Likewise, the Affidavit in this case does not contain any billing records from Target URL[1] or any evidence directly linking Glowacki to Target URL as was present in *Wagers*. Instead, the Affidavit claims that Glowacki transferred Bitcoin to BTC Address, and that BTC Address was associated with Target URL (as well as other websites). Finally, the Affidavit makes clear that Target URL does not advertise itself as a subscription website – that is, the website does not advertise a monthly price or contain any statements regarding a limited time frame to access the website.

Most significantly, the Government essentially concedes that "the Affidavit does not clarify whether Glowacki sent payment to BTC Address with the intention to make a payment to Target URL." (Doc. #38, PageID 246). By the Government's own admission, the Affidavit does not claim that Glowacki sent payment to BTC Address in exchange for access to Target URL or any other child pornography website. Accordingly, it cannot be said that Glowacki had a subscription to a child pornography website, or otherwise obtained access to child pornography material.

---

[1] In fact, the Affidavit fails to allege that Glowacki ever transferred money directly to Target URL.

4

The undersigned respectfully submits that the foregoing facts are sufficient to distinguish this case from *Frechette*, *Wagers*, and *Paull*. Because the Affidavit fails to establish that Glowacki purchased or maintained a subscription to a child-pornography website, the Magistrate erred in finding that there was probable cause to justify the issuance of a search warrant.

### 2. *Payment discrepancies*

As set forth in Defendant's Motion to Suppress (Doc. #38), the value of the Bitcoin that Glowacki transferred does not match the advertised cost of access to Target URL or any other child pornography website mentioned in the FBI serials. The Government attempts to downplay this discrepancy by suggesting that the reason Glowacki's transfers of 0.00252 BTC (then valued at $18.27 USD) and 0.00252 BTC (then valued at $18.29 USD) are more than $3.00 USD greater than the advertised price of $15.00 USD is because of Coinbase fees. In fact, the Government goes so far as to assert that, "[e]very Bitcoin transaction requires a fee" and cites to a Coinbase help center page titled "Coinbase pricing and fees disclosures." (COINBASE, https://help.coinbase.com/en/coinbase/trading-and-funding/pricing-and-fees/fees (last visited Jul. 29, 2021)).

Ironically, this contention is directly contradicted by statements contained on the very website cited within the Government's Brief. Specifically, the website's home page contains the following unequivocal statement: "[w]e do not charge for transferring cryptocurrency from one Coinbase wallet to another." *Id*. In other words, not *every* transaction requires a fee. Moreover, the Coinbase website cited by the Government primarily discusses Buy/Sell Transaction fees, not transfers of already purchased Bitcoin from one wallet to another. *Id*. Here, the Bitcoin transfers of interest – *i.e.*, from Glowacki's Coinbase Wallet to BTC Address – are not Buy/Sell Transactions.

5

While the Government is correct that Glowacki incurred a small fee, called a "gas fee," when he transferred Bitcoin from his Coinbase Wallet to BTC Address *see* COINBASE, https://www.coinbase.com/learn/tips-and-tutorials/how-to-send-crypto (last visited Jul. 29, 2021), this is due to the fact that BTC Address is not part of Coinbase. There is no need to speculate as to the specific amount of the gas fee charged; rather, said information is set forth in the Coinbase records provided by the Government. These records clearly demonstrate that Glowacki incurred gas fees in the amounts of 0.00001562 BTC and 0.00001563 BTC for his transfers to BTC Address. The records further show that BTC Address still received 0.0025 BTC at the end of each transaction.

At the time these transactions were made, 0.0025 BTC was still valued above $18.00 USD. $18.00 USD is more than 20% greater than the advertised cost of Target URL, which was $15.00 USD. This is not an insignificant difference. Nonetheless, the Government fails to offer a valid explanation as to why Glowacki allegedly paid more than $18.00 USD for something which was advertised to cost only $15.00 USD. Thus, it is equally – if not more – plausible that Glowacki transferred Bitcoin to BTC Address for some other purpose, and not to obtain access to Target URL or any of the other child pornography websites associated with BTC Address.

**B.    The Affidavit Does Not Establish a Sufficient Nexus Between the Place to be Searched and the Evidence to be Seized.**

The Government makes several assertions within its Brief in an effort to establish a sufficient nexus between Glowacki and the Target Premises, none of which are compelling. The Government does not dispute that the Affidavit fails to allege that Glowacki used his email account to send, receive, or view child pornography. Instead, the Government attempts to downplay the significance of this fact by positing "it is unlikely that Glowacki would be willing to send bitcoin to the dark web, an area of the internet where anonymity is of the utmost importance for all the

illegal purchases which take place there, and yet still use a standard email address which contains his full last name." (Doc. #38, PageID 243). In essence, the Government argues that Glowacki would not use a personal email account to engage in criminal activity, particularly when maintaining anonymity is of the utmost importance.

Fortunately, defense counsel and the Government are in complete agreement on this issue. If, as the Affidavit suggests, Glowacki's intention was to send Bitcoin to the dark web for illegal purchases, it is unlikely he would use a standard email address which contains his full last name. To the contrary, it is far more likely that any transactions made using Glowacki's standard email address (or a Coinbase account registered to his standard email address) were not made for illegal purchases.

**C.     The "Good Faith" Exception is Inapplicable**

The Government contends that the "good faith" exception to the exclusionary rule should apply in this case because, *inter alia*, "none of the information in the affidavit was false." (Doc. #38, PageID #245). Even assuming, without conceding, that the Government's characterization of the Affidavit is accurate, it nevertheless ignores the fact that an omission that is critical to the probable cause determination is equivalent to a falsity. *See Franks v. Delaware,* 438 U.S. 154 (1978).

In determining whether an Affidavit is sufficiently misleading so as to suggest an absence of good faith, courts have considered whether the Affidavit includes irrelevant or inapplicable information – commonly referred to as "puffing" – in an apparent "attempt to endue the affidavit with the appearance of genuine substance." *United States v. Perez*, 393 F.3d 457, 465 (4th Cir. 2004), *quoting United States v. Wilhelm*, 80 F.3d 116, 123 (4th Cir. 1996).

7

In the case at bar, only one (1) paragraphs of the Affidavit address Glowacki's allegedly unlawful conduct – sending two (2) bitcoin payments to BTC Address on December 24, 2019.[2] The vast majority of the content in the Affidavit relates to the Government's investigation into Target URL and other sites on the dark web advertising paid access to child pornography.  By including that information, the Government sought to convince the magistrate that the bitcoin transactions were intended to – and, in fact, did – allow Glowacki to access child pornography materials on Target URL.  Yet, none of the evidence set forth in the Affidavit establishes a fair probability that the payments were related to Target URL, that Glowacki ever visited Target URL, or that he downloaded child pornography to one of his electronic devices.  In the absence of such evidence, the Affidavit's description of child pornography sites on the dark web, including Target URL, is not at all crucial to understanding why the Government believed Glowacki's residence would contain evidence of criminal activity.

The decision to focus on superfluous and seemingly irrelevant information was by no means accidental but was instead intended to give the illusion that the Affidavit had genuine substance.  In reality, however, the portions of the Affidavit pertaining to Glowacki established only that he sent two (2) bitcoin payments to an account (*i.e.*, BTC Address) that had been associated with, among countless other potentially legal activities, a site on the dark web (*i.e.*, Target URL) offering access to child pornography materials on December 24, 2019. The Affidavit's inclusion of information (*e.g.*, descriptions of content depicted; instructions for obtaining subscription; etc.) regarding child pornography sites on the dark web, including Target URL, was materially misleading.

---

[2] It is important to note, however, that there is nothing illegal – in and of itself – with engaging in such transactions.

8

This is particularly true when considering the information that was intentionally omitted from the Affidavit. *See, e.g., United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)(holding that an Affidavit also is misleading when affiants "omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading"). Specifically, by the Government's own admission, the Affidavit omitted material information concerning the BTC Address and Glowacki's bitcoin transactions. Because the Government's probable cause theory rests exclusively on the premise that Glowacki's payments to BTC Address were intended to provide him access to Target URL, the conspicuous omission of relevant facts – *i.e.*, that BTC Address was not exclusively affiliated with Target URL and/or that the payment amounts differed from the prices advertised on the child pornography websites – from the Affidavit casts substantial doubt on the probability that Glowacki purchased a "subscription" to Target URL, let alone that he ever visited the site or viewed child pornography using his electronic devices.

The FBI reports provided by the Government confirm that Agent Hantz was aware of these facts prior to submitting the Affidavit in support of the search warrant. As such, it is reasonable to conclude that the omission of said information from the Affidavit was at least reckless, if not deliberate. *See, e.g., United States v. Jacobs*, 986 F.3d 1231, 1234-1235 (8th Cir. 1993)(reasoning that an "omission occurred at least with reckless disregard with its effect upon the affidavit" when "[a]ny reasonable person would have known that this was the kind of thing the [magistrate] judge would wish to know"). Because the omitted information served to mislead the magistrate in rendering a probable cause determination, the Government cannot avail itself of the "good faith" exception, and all evidence seized pursuant to the search warrant must be suppressed and excluded from trial.

### D. A *Franks* Hearing in Warranted

Defendant's Motion to Suppress clearly establishes that the Affiant omitted material information from the Affidavit used to obtain the search warrant in this case. By the Government's own admission, the "Affidavit omits that Target URL is not the only website that BTC Address is associated with." (Doc. #38, PageID 245). Likewise, it is undisputed that the Affidavit failed to provide details regarding the timing or value of the two (2) payments that Glowacki made to BTC Address. As discussed *supra*, these omissions are material because the omitted information undoubtedly undermines the Affidavit's contention that Glowacki sent Bitcoin to BTC Address for the sole purpose of gaining access to Target URL or another website advertising child pornography materials. And, without evidence connecting the transactions to Target URL, there is no basis to conclude that Glowacki ever accessed, viewed, possessed or received child pornography so as to justify the issuance of a search warrant.

### II. CONCLUSION

Recognizing that the advent of new technology – like the Internet and the ability to store vast amounts of information in small electronic devices – "enhance[s] the Government's capacity to encroach upon areas normally guarded from inquisitive eyes," the Supreme Court has rejected "'mechanical interpretation[s]'" of the Fourth Amendment that would allow the Government to "capitalize" on such technology to invade the reasonable expectations of privacy and security protected by that Amendment. *Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018), *quoting Kyllo v. United States*, 533 U.S. 27, 35 (2001). Rather, when applying the Fourth Amendment in the context of new or advancing technology – like cryptocurrency and the dark web at issue in this case – courts must seek to "assure…preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." *Id.*, *quoting Kyllo*, 533 U.S. at 34.

The fact that child pornography may have been found on Glowacki's device after the search warrant was executed is of no significance to the issues herein before the Court. To the contrary, it is well-settled law that what an illegal search ultimately reveals has *no bearing* on whether the evidence the government provided to the magistrate was adequate to establish probable cause to conduct the search in the first place. *See, e.g., United States v. Ramirez,* 523 U.S. 65, 71 (1998)("in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry*"); *United States v. Di Re*, 332 U.S. 581, 595 (1948)("[w]e have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success"); *Byars v. United States*, 273 U.S. 28, 29-30 (1927)("[n]or is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed"); *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016)("[n]either the officer's subjective beliefs *nor information gleaned post-hoc* bear on this inquiry"); *McColley v. City of Rensselaer*, 740 F.3d 817, 841 n. 3 (2d Cir. 2014)("[p]robable cause is not backward looking. Thus, the results of a search are immaterial to a determination of whether the search was supported by probable cause"); *United States v. Sims*, 553 F.3d 580, 583 (7th Cir. 2009)("there is a practical reason for requiring warrants where feasible: it forces the police to make a record before the search, rather than allowing them to conduct the search without prior investigation in the expectation that

if the search is fruitful a rationalization for it will not be difficult to construct, working backwards").

Here, the Affidavit failed to establish probable cause to believe that Glowacki possessed or received child pornography and/or that evidence of said offenses was likely to be located at the Target Premises. At most, the Affidavit establishes that Glowacki sent two (2) bitcoin payments to an account (*i.e.*, BTC Address) that had been associated with, among countless other potentially legal activities, a site on the dark web (*i.e.*, Target URL) offering access to child pornography materials on December 24, 2019. The absence of any evidence that Glowacki paid for a subscription or otherwise gained access to a website containing child pornography materials is itself sufficient to distinguish this case from the precedent upon which the Government relies. Under the Government's theory, law enforcement could obtain a search warrant for anyone who may engaged in cryptocurrency transactions with BTC Address without any additional evidence relating to child-pornography activities. Respectfully, such an approach would undermine the compelling protections at the foundation of the Fourth Amendment.

Moreover, the Government failed to reconcile the significant discrepancies between the payments Glowacki sent to BTC Address and the costs advertised by Target URL or otherwise explain why said information was omitted from the Affidavit. The omission of this information renders the good faith exception inapplicable. At the very least, it underscores the need for a *Franks* hearing to properly determine whether these material omissions affected the Magistrate's probable cause determination.

**WHEREFORE**, for the foregoing reasons, the Defendant, Joshua Glowacki, hereby respectfully moves this Honorable Court to issue an Order suppressing and excluding any and all evidence seized from the Target Premises on March 23, 2021, as well as any and all fruits of said evidence. In the alternative, counsel requests that the Court schedule the matter for a *Franks* hearing to determine whether the material omissions heretofore discussed are sufficient to negate the Magistrate's probable cause determination.

Respectfully submitted,

/s/ Eric Nemecek
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, Ohio 44114
P: (216) 928-7700
E: ecn@fanlegal.com