THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR258 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOSHUA GLOWACKI, | ) | |
| | ) | (Resolves Doc. 37) |
| Defendant. | ) | |

This matter comes before the Court on Defendant Joshua Glowacki's two-part motion seeking a *Franks* hearing and to suppress the evidence seized from his residence. Upon review, the motion is DENIED.

I. *Franks* Standard

The *Franks* Court set out the standard a defendant must satisfy to warrant a hearing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978)   This high initial burden is designed to prevent defendants from abusing the process and to ensure that frivolous claims do not result in mini-trials. *Id.* at 170.  In order to understand Glowacki's argument surrounding the affidavit at issue,

the Court briefly explains the background that led to the search and seizure that is being contested.

II. Background and Affidavit

Bitcoin ("BTC") is a type of virtual or cryptocurrency. One court has described the use of BTC addresses as follows:

> BTC is sent to and received by BTC addresses. A BTC address is somewhat analogous to a bank account number and is represented as a lengthy string of case-sensitive, alphanumeric characters. Each BTC address is controlled with a unique private key, which is the cryptographic equivalent of a password or PIN needed to access the address, and only the holder of a BTC address' private key can authorize a transfer of BTC from that address to another BTC address.

*United States v. Dove*, No. 8:19-CR-33-T-36CPT, 2020 WL 9172971, at *2 (M.D. Fla. Sept. 4, 2020), report and recommendation adopted, No. 8:19-CR-33-CEH-CPT, 2021 WL 838737 (M.D. Fla. Mar. 5, 2021)(quotations and citations omitted).[1] Additionally, the "dark web" has been described as follows by the Sixth Circuit: "The 'dark web' is a sophisticated, anonymous internet network used both by criminals and by other individuals who, for whatever reason, do not want to be identified." *United States v. Tagg,* 886 F.3d 579, 582 (6th Cir. 2018).

In this case, the affidavit detailed that on October 9, 2020, a subpoena was served on Coinbase seeking records associated with BTC addresses known to associated with dark web sites that advertise Child Sexual Abuse Material. The records supplied in response to the subpoena indicated that Glowacki had sent BTC payments to a BTC address associated with such a site. Specifically, the affidavit included:

> On December 24, 2019, GLOWACKI'S ACCOUNT sent two payments to bitcoin address 15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ (BTC Address). This address is associated to the dark net site hosted in the URL childsivo3n3xzei.onion (Target URL) which advertises itself as "terabytes of child porn private site".

---

[1] A nearly identical definition and explanation of BTC addresses was contained in the search warrant utilized in this case.

Doc. 37-3 at 20. The affidavit went on to note:

> Open searches for information associated to BTC Address revealed that this bitcoin address has been previously reported in the public website www.bitcoinabuse.com as follow: "TOR site advertising for child exploitation videos. Below is the ad US $ 15 – After payment to the bitcoin address number: 15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ write the transaction number write to e-mail: video-child@secmail.pro we will send you access."

Doc. 37-3 at 21. The affidavit then detailed that investigators visited the Target URL site on October 27, 2020. Upon visiting the site, investigators viewed what they believed to be child pornography.

> e. The website advertised "Access to 10 + terabytes of child porn private site."
>
> f. At the time of the review, Target URL listed BTC address 1Gs7Aztizk2rNNSE6AbpK4K7yAFTCZKV9a (BTC Address 2) for payments. Users of the website are expected to send payment in form of BTC to the provided address prior to getting access to a larger collection. The website asked for users to send the transaction id associated to the payment to email address child-video@secmail.pro and "we will send you access."

Doc. 37-3 at 22. The affidavit further included the fact that Glowacki is a registered sex offender in the state of Ohio and that he had pled guilty to Pandering Sexually Oriented Matter Involving a Minor in 2019.

   III. *Franks* Analysis

Glowacki contends that there are material omissions in the affidavit. Specifically, Glowacki contends that the affidavit failed to demonstrate that the BTC address was not also associated with lawful web sites. Glowacki also contends that affidavit fails to specify that Glowacki made two separate BTC payments to the BTC Address roughly 26 minutes apart. These payments were roughly $18.27 and $18.29. Finally, Glowacki contends that the affidavit omits that Glowacki took none of the subsequent steps detailed in the affidavit that were required to finalize any access to the Target URL.

With respect to Glowacki's initial contention, the Court finds no merit in his argument. While Glowacki contends that the BTC Address *could* have been affiliated with sites other than those offering child pornography, he offers no evidence that it actually was affiliated with any legal site. In fact, the BTC Address was found to be associated with *three* sites including the Target URL – all of which had been marked as containing child pornography. Accordingly, the failure of the affidavit to include all three of these sites cannot be said to have been a material omission. To the extent that Glowacki maintains that it is *possible* that the BTC Address was affiliated with other, lawful sites, his assertions are speculative as they have no factual basis.

Similarly, the Court finds no merit in Glowacki's contention that the failure to detail the precise amount of his BTC payments was a material omission. In this regard, Glowacki's argument appears to focus upon the fact that a prior advertisement for the Target URL offered access to the site for $15. Glowacki's argument, therefore, is that because he paid some amount other than $15, the affidavit should have disclosed that fact.[2]

Glowacki's argument, however, wholly fails to explain away his payments to a BTC Address that services a URL that hosts child pornography. In other words, the affidavit offered evidence that the URL offered access to child pornography in exchange for payment. The fact that Glowacki paid some amount other than the amount law enforcement was aware of through a prior advertisement does not alter the fact that payment was made. As there is no information before this Court that the BTC Address was associated with any URL other than those offering child pornography, the amount of the payments made by Glowacki is immaterial and its exclusion does not warrant a hearing.

---

[2] The parties disagree over the ultimate amount Glowacki paid after fees that were incurred related to his transfer. However, in any event, with multiple payments, Glowacki paid well in excess of $15.

Finally, Glowacki contends that the affidavit detailed the manner in which access would be granted following payment. The affidavit indicated that a small payment would be sent back to Glowacki and the amount of the payment would be the password needed for access. Glowacki also contends that affidavit included that an email should be sent to child-video@secmail.pro with a transaction ID to receive access to the site. Glowacki contends that the affidavit omitted that he never received any such small payment and that there is no record of him sending or receiving any email from address detailed in the affidavit.

Once again, Glowacki's argument hinges upon his belief that probable cause could *only* be demonstrated with evidence that he had completed every act required by one advertisement that was noted in the affidavit. In other words, Glowacki contends that any fact that demonstrated he did not fulfill some detail of the known advertisement should have been included in the affidavit. Glowacki has offered no legal support for this contention, and this Court has been unable to locate any such support.

Glowacki's argument is flawed in that it ignores the underlying purpose of the "dark web" – i.e., to avoid detection by law enforcement. The following facts: 1) that Glowacki paid an amount other than $15, 2) that he did not receive a password in the manner described in the advertisement, and 3) that it does not appear to have sent an email to the address listed do not in any manner undermine the probable cause determination.[3] Accordingly, omitting these facts from the affidavit does not support Glowacki's request for a *Franks* hearing.

IV. <u>Probable Cause</u>

Glowacki contends that the affidavit failed to establish probable cause to search the residence at issue. "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith*, 182 F.3d

---

[3] The Court's probable cause analysis can be found in the subsection that follows.

473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991). However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *Id*. (citing *Gates*, 462 U.S. at 238). Moreover, a "person of reasonable caution" would consider predilections revealed by past crimes or convictions as part of the inquiry into probable cause. *See, e.g., United States v. Blanton*, 520 F.2d 907, 912 (6th Cir.1975).

There must be a "'nexus between the place to be searched and the evidence sought.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). That nexus can be inferred from "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (internal quotation marks and citations omitted). In the context of child pornography prosecutions, the Sixth Circuit has noted:

> We have held in the context of child pornography that an affidavit including both information connecting the defendant to the offending username and information about where the defendant lived established probable cause to search the defendant's residence. *United States v. Lapsins*, 570 F.3d 758, 766 (6th Cir.

> 2009). This inference is permitted in the child pornography context, we have explained, because these crimes are committed in a private place with high-speed Internet. *Id*. (citing *Wagers*, 452 F.3d at 540). The agents established that Elbe's jessiecash account was associated with his residence. They did so by tying jessiecash to Elbe with evidence of IP addresses from two hotels. And a few months later, agents tied jessiecash to a residence in Central City with high-speed Internet, where agents observed Elbe, and where Elbe paid utility bills. That is a sufficient nexus.

*United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014). The Circuit similarly noted: "The evidence in our case connecting the defendant, his computer, his IP address, and his home to the offense is considerably stronger, particularly where the criminal activity (viewing child pornography) is much more tied to a place of privacy, seclusion, and high-speed Internet connectivity (e.g. a home or office) than the storing of drugs (which can take place in a car, a ditch, a hole in the ground, etc.)." *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) (expressly finding that a prior conviction for possession of child pornography is relevant when analyzing probable cause).

    A. *Probable Cause Analysis*

The affidavit in this matter detailed Glowacki's prior conviction for pandering sexually oriented material involving a minor, including the fact that Glowacki remained on probation for that offense. The affidavit then provided information that the BTC Address was associated with a website that allowed for paid access to child pornography and that Glowacki had made payment to the BTC Address. The affidavit also indicated that investigators had independently visited the Target URL associated with the BTC Address and confirmed that it contained child pornography.[4] Those facts were more than sufficient to establish probable cause to believe that Glowacki possessed child pornography.

---

[4] Glowacki raises an argument that investigators visited the site much later in time than he did, suggesting the content of the site could have changed. However, *prior* evidence suggested that the target URL offered child

7

Glowacki reiterates here an argument similar to the one he raised in support of his request for a *Franks* hearing. Specifically, Glowacki contends that the affidavit is silent with respect to him actively accessing child pornography from the Target URL. However, Glowacki can offer no legal support for his assertion that such evidence is *required* in order to find probable cause. Instead, the Sixth Circuit has held that "[e]vidence that an individual subscribed to child pornography web sites supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009) (citation and quotations omitted).

> Stated another way: if someone spends $80 for something, it is highly likely that the person will use it—whether it is a tie, a video game, or a subscription to a pornographic web site. Moreover, the fact that the defendant had viewed the splash page that contained pornographic images of children, set up an account with PayPal on the same day, and transferred the exact amount of funds needed from his debit card to the PayPal account to pay for the subscription makes it all the more likely he would access what he paid to view. To hold otherwise would defy logic.

*Id.* at 380–81 (footnote omitted). Accepting Glowacki's argument would similarly defy logic. Glowacki transferred cryptocurrency to a BTC Address that was associated with a child pornography website on the dark web. Glowacki took these steps *after* becoming a convicted sex offender and *while* still on probation for that conviction. It defies logic to suggest that Glowacki took these steps and transferred money to the BTC Address and did not access the Target URL. Accordingly, Glowacki's probable cause argument lacks merit.

B. *Nexus*

Finally, the Court finds no merit in Glowacki's contention that the affidavit failed to establish a nexus between his activity and the residence that was searched. The affidavit detailed that the IP address 108.94.129.177 was assigned to the residence at issue from November 9,

---

pornography with payment. The later review of the site indicated that it still offered child pornography. As such, there is no basis to contend that the later review by investigators should be discounted.

2020 through January 2, 2021. The affidavit next noted that Glowacki's email address was accessed numerous times from that same IP address. The affidavit also indicated that Glowacki was observing doing clearing snow from the driveway of the residence and that Glowacki's driver's license listed the residence as his home address. As was the case in *Elbe*, the affidavit sufficiently tied Glowacki to the residence. The fact that Glowacki routinely accessed his email[5] from the IP address assigned to the residence effectively established that he accessed the internet from that location as well.[6] As a result, the affidavit properly established a nexus between the items to be seized and Glowacki's residence.

    Glowacki's two-part motion is DENIED.

    IT IS SO ORDERED.


    August 20. 2021                          */s/ Judge John R. Adams*
                                                     JUDGE JOHN R. ADAMS
                                                     UNITED STATES DISTRICT COURT

---

[5] This same email account was used to setup Glowacki's Coinbase account which facilitated his BTC payment.

[6] Glowacki attempts to argue that his actual BTC payments were made from a different IP address. However, even accepting that information as true, it does not alter that the affidavit provided sufficient evidence to determine that Glowacki was accessing the internet from the target residence.