IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-cr-258 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | |
| JOSHUA GLOWACKI, | ) | **DEFENDANT'S MEMORANDUM IN** |
| | ) | **SUPPORT OF SENTENCING** |
| Defendant. | ) | |
| | ) | |

Now comes the Defendant, Joshua Glowacki, by and through undersigned counsel, Friedman & Nemecek, L.L.C., and hereby respectfully submits the instant Memorandum in Support of Sentencing for this Honorable Court's consideration in determining an appropriate disposition in this matter. The instant Memorandum contains information pertaining to Mr. Glowacki that is relevant to this Court's determination of a sentence that is sufficient, but not greater than, that which is necessary to satisfy the principles and purposes of federal sentencing.

                                              Respectfully submitted,

                                              */s/ Eric C. Nemecek*
                                              ERIC C. NEMECEK (0083195)
                                              Counsel for Defendant
                                              Friedman & Nemecek, L.L.C.
                                              1360 East 9th Street, Suite 650
                                              Cleveland, OH 44114
                                              P: (216) 928-7700
                                              F: (216) 820-4659
                                              E: ecn@fanlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum was filed by CM/ECF on the 25th day of February, 2022, which will send a notification of such filing electronically to the following: Michael A. Sullivan, Assistant United States Attorney, 801 Superior Avenue, Cleveland, OH 44113.

Respectfully submitted,

/s/ *Eric C. Nemecek*
ERIC C. NEMECEK
Counsel for Defendant

**MEMORANDUM IN SUPPORT**

I. **FACTUAL HISTORY**

On October 28, 2021, Mr. Glowacki entered a plea of "Guilty" to one (1) count of Receipt of Visual Depiction of a Minor Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2). At the present time, Mr. Glowacki stands before this Honorable Court for the imposition of his sentence. Mr. Glowacki requests that the Court consider the information set forth in the instant pleading, as well as additional evidence and arguments to be presented at the sentencing hearing, in determining a fair and appropriate disposition of this case.

II. **AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).**

In light of *United States v. Booker*, 543 U.S. 220 (2005), this Honorable Court is required to engage in a multi-step analytical process at sentencing. First, the Court must determine, after making appropriate findings of fact, the applicable Guidelines range. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). After making appropriate findings of fact, the Court must then determine whether a "variance or departure from the advisory guideline range would be appropriate." *United States v. Cunningham*, 680 F. Supp. 2d 844, 846 (N.D. Ohio 2010) *citing United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). Finally, the Court must evaluate the factors set forth in § 3553(a) to determine if a sentence within the guideline range serves those factors. *Grossman*, 513 F.3d at 595.

A. **Calculating the Appropriate Guidelines Range**

As an initial matter, it is undisputed that Mr. Glowacki accepts full responsibility for his offenses. His life has been forever changed as a result of his choices and the repercussions of his actions. Mr. Glowacki recognizes the severity of this situation and is dedicated to separating

himself from the behavior that gave rise to the instant matter. He is remorseful and contrite for his misconduct and desires the opportunity to continue his efforts of being a productive and law-abiding citizen after the disposition of this case. As set forth in the Plea Agreement, the parties have stipulated to the following Guideline calculations:

| **Count 1: Guideline § 2G2.2** | | |
|---|---|---|
| Base offense level | 22 | § 2G2.2(a)(2) |
| Prepubescent Minor | +2 | § 2G2.2(b)(2) |
| Sadistic/Masochistic Conduct, other depictions of violence | +4 | § 2G2.2(b)(4) |
| Use of a computer | +2 | § 2G2.2(b)(6) |
| Acceptance of responsibility | -3 | § 3E1.1 |
| **Subtotal:** | **27** | |

As noted above, the United States Supreme Court requires sentencing courts to engage in a multi-step analytical process at sentencing. *See Booker*, 543 U.S. 220. Post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." (quotation and citation omitted) *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Accordingly, although the "[g]uidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for "reasonableness." *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1241 (2011), *citing Gall v. United States*, 552 U.S. 38, 49-51 (2007).

The Supreme Court has expressly directed that an "individualized assessment" of the case "based on the facts presented" is required. *Gall*, 552 U.S. at 50. Such analysis should be guided by "reasonableness" and an "individualized application of the statutory sentencing factors." *Id.* at 46-47. A sentencing judge retains "wide latitude to decide the proper degree of punishment for an individual offense and a particular crime." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir.

4

2008).

### B. Examination of the Factors Set Forth in 18 U.S.C. § 3553(a).

#### 1. Nature and Characteristics of the Offense and the History and Characteristics of Mr. Glowacki.

##### a. *History and Characteristics of Mr. Glowacki.*

In *Pepper*, *supra*, the United States Supreme Court endorsed the notion that post-*Booker* sentencing must focus as much on the offender, his individual background, and his need for services and rehabilitation as on the offense committed. According to the Court,

> highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant.

(citation omitted) *Pepper*, 131 S. Ct. at 1240.

With the above statement from *Pepper* in mind, Mr. Glowacki respectfully submits that his character and background are highly relevant and essential to the Court's determination of an appropriate sentence. Born on February 5, 1998, in Cleveland, Ohio, Mr. Glowacki has lived with his mother and father at his childhood home since birth. *See* Pre-Sentence Report ("PSR") at ¶61. Mr. Glowacki attended Parma High School, graduating in 2016. Thereafter, he attended Cuyahoga County Community College for one (1) year and The University of Akron for two (2) years, but was ultimately forced to drop out after he was arrested and charged in the previous State court proceedings.

##### b. *Mr. Glowacki's Mental Health History.*

Mr. Glowacki has struggled with mental health conditions that require ongoing treatment. In 2019, Mr. Glowacki was diagnosed with depression and general anxiety disorder. *See* PSR at ¶47. He was later diagnosed with Adjustment Disorder with mixed disturbance of emotions and

conduct. *Id.* at ¶48. Mr. Glowacki was prescribed Zoloft, Effexor, and Haldol to take on a daily basis. *Id.* at ¶47.

Prior to commencing treatment, Mr. Glowacki underwent a psychosexual evaluation at Advanced Psychotherapy Services ("APS") in Wickliffe, Ohio. The test results confirmed that Mr. Glowacki suffered from sexual addiction. *Id.* at ¶50. He was also determined to present with an above-average risk of recidivism. *Id.* Based upon the assessment, APS recommended that Mr. Glowacki participate in individual and group sex offender counseling through APS. Mr. Glowacki heeded his counselors' advice and immediately began treatment with APS.

At the time of his arrest in connection with this case, Mr. Glowacki had been in treatment with APS for nearly three (3) years. Both Mr. Glowacki and his counselors believed that he made significant progress with his treatment; however, it is clear that he did not have the underlying issues fully under control. After the search warrant was executed, Mr. Glowacki's mental health began to decline. He suffered panic attacks and became deeply depressed. At the suggestion of his counselor, Mr. Glowacki was admitted to the psychiatric ward at University Hospitals. *Id.* at ¶51. Mr. Glowacki remained hospitalized for four (4) days and, upon his release, made arrangements to voluntarily self-surrender to the United States Marshal's Office in connection with this case. *Id.*

Mr. Glowacki recognizes that mental health treatment is a necessary component of maintaining a healthy and law-abiding life. He is committed to continuing his rehabilitative efforts during the term of his incarceration as well as when he is released into the community. The Clinical Director of APS, Gary Echt, LPCC, LICDC, LMHC, SAP, NCGC I, CSAT, believes that Mr. Glowacki "would highly benefit from a treatment regimen consisting of both sex offender group and individual counseling, medication regimen to address anxiety and depression, and attendance to a sexual addiction 12-step program for additional support." *See* Sexual Behavior Evaluation by

6

Gary Echt, attached hereto as Exhibit "A."[1] Echt explains that "attendance and participation in these treatment opportunities will substantially help reduce the risk of any recidivism in terms of these types of sexual behaviors. Documented data indicates that individuals who have completed a certified treatment program are much less likely to engage in these behaviors in the future." *Id*.

### c. *Mr. Glowacki's Remorse and Contrition.*

Mr. Glowacki accepts responsibility for his conduct in this case, as evidence by his plea of "Guilty." Mr. Glowacki conveyed his sincere remorse during his PSR interview, stating that "[i]t was never my intention to harm anyone, especially the individuals depicted in the materials herein at issue. However, I understand that my actions have had that unintended effect. I am genuinely remorseful for any pain or suffering that may have resulted from my behavior . . . ." *See* PSR at ¶18.

At the present time, Mr. Glowacki stands before this Honorable Court humbled, remorseful, and contrite. He understands that his conduct was wrong, and he is embarrassed and ashamed for putting himself and his loved ones in this untenable position. Mr. Glowacki desperately wants to atone for his poor choices and continue to receive treatment to rehabilitate himself. He is committed to doing whatever is necessary to move forward with his life and to continue his efforts at being a positive and contributing member of society after his release.

Even when the Sentencing Guidelines were mandatory, courts recognized the significant mitigating effect of the facilitation of the administration of justice and the defendant's expression of remorse. *See, e.g., United States v. Rudolph*, 190 F.3d 720, 722-23 (6th Cir 1999); *United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998) ("[b]ecause remorse is not a prohibited factor,

---

[1] Due to the nature of the Report and the information contained therein, the undersigned filed this document separately and under seal. *See* ECF No. 55.

7

but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree"); *United States v. Garcia*, 926 F.2d 125 (2d Cir. 1991); *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2000) (noting that activities facilitating the proper administration of justice may form the basis for a downward departure). After the Guidelines were made advisory, these factors remain a relevant consideration for courts in determining a reasonable sentence. *See* 18 U.S.C. § 3553(a).

### d. *Support of Family and Friends.*

District courts have recognized the importance of a defendant's strong social support system in fashioning a sentence that is sufficient, but not greater than necessary to satisfy the principles and purposes of federal sentencing. *See United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007) (explaining that "[w]here the Court has found strong social support from family, friends, and others the Court has deemed a lower sentence appropriate.").

In anticipation of sentencing, the undersigned has received a number of letters from Mr. Glowacki's friends and family, all wishing to make their support of Mr. Glowacki known to this Honorable Court. Despite this charge and objectionable decisions in his past, these letters portray Mr. Glowacki as a kind, hard-working, thoughtful, and supportive family man. *See* Letters of Support, attached hereto as Exhibits "B" – "E."

Mr. Glowacki's parents note that he "was always helpful around the house and with carrying [sic] for the family pets." *See* Letter of Support from Mathew and Laura Glowacki, attached hereto as Exhibit "B." Mr. And Mrs. Glowacki blame themselves in part for their son's illness: "[w]e wished we would have realized it sooner" that Joshua had "anxiety and depression." *Id*. Many of his behaviors as a child were outside of his control like "[g]etting sick before going to school." *Id*. Even though he was "a quiet and shy boy," Mr. and Mrs. Glowacki write that Joshua

8

"loved to read. He enjoyed learning . . . played the saxophone . . . and was an altar boy at our church. Joshua was an above average student who graduated with honors . . . ." *Id*.

Mr. Glowacki's grandmother, JoAnn, goes further in stating that "[h]is grades were good enough to receive scholarships to the University of Akron." *See* Letter of Support from JoAnn Glowacki, attached hereto as Exhibit "C."  JoAnn also echoes his parents' sentiments about the kind and loving boy Joshua was: "When I attended Joshua's high school concerts, etc. he would always walk with me to my car afterwards to make sure I was there safely." JoAnn adds that "I know Josh is a good person who has made some wrong and thoughtless decisions" but that does not detract from the grandson she knows: a kind and respectful boy who helped her with house and yardwork. *Id*. It is JoAnn's hope that Joshua can be rehabilitated: "Please consider the minimum sentence so that Joshua can begin to turn himself around while still a young man." *Id*.

Mr. Glowacki's Aunt, Cheryl Paganelli, describes him as "a quiet and gentle person." *See* Letter of Support from Cheryl Paganelli, attached hereto as Exhibit "D." Ms. Paganelli is "prepared to offer Josh all the love and support that I can, he is an important part of our family. He is still a young man and I believe he will be able to overcome his issues with the support of his family." *Id*. Similarly, Alisa Sticker "want[s] to share [her] hope that somehow Josh will be able to get past this someday and will get the help he needs to have some kind of future. He is a very young and had such a promising future coming out of high school." *See* Letter of Support from Alisa Sicker, attached hereto as Exhibit "E." Cognizant that the right counseling could help Mr. Glowacki, Ms. Sicker implores this Honorable Court to provide him with "the opportunity for rehabilitation [as] part of your judgment in the sentencing of this case." *Id*.

9

Mr. Glowacki's family all focus on one thing in their support of Joshua: he is young and can be rehabilitated with the appropriate treatment while in prison. Once released, the entire family is ready and willing to ensure Mr. Glowacki has their support.

> **2. Need for Sentence Imposed – To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and To Provide Just Punishment for the Offense; To Afford Adequate Deterrence to Criminal Conduct; and To Protect the Public from Further Crimes of the Defendant.**

At the time of sentencing, it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2)(A)-(D). These purposes include promoting respect for the law, which incorporates providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by Mr. Glowacki; and providing him with any needed rehabilitation and treatment.

> a. *Punishment and Deterrence.*

When applying the above-referenced factors to the case at bar, it is apparent that a term of incarceration, above and beyond the mandatory fifteen (15) years per statute, is not necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a). Mr. Glowacki is aware that under the relevant statutory provisions, he will be facing a substantial term of incarceration. However, the undersigned respectfully submits that Mr. Glowacki has already suffered – and will continue to suffer – significant hardship as a result of his case, irrespective of whatever term of incarceration that this Honorable Court imposes. In addition to facing a loss of liberty, Mr. Glowacki will also be punished by the collateral consequences associated with having a federal felony conviction, including forfeiting certain constitutional rights, the loss of liberty, and being required to register as a sex offender upon his release from prison.

The time that Mr. Glowacki has been under Indictment in this case, and the potential

sentence of incarceration that could be imposed, have had a dramatic impact on him. He has had ample time to reflect upon his conduct and the consequences for his wrongful behavior. Further, he has used his time while indicted to furnish a plan to change his ways and ensure he is never in a similar predicament. The prospect of a term of incarceration is not lost upon him.

It is respectfully submitted that a term of incarceration, beyond the statutorily required fifteen (15) year term, is not necessary to satisfy either general or specific deterrence.

### b. *Age, Recidivism, and the Need for Incarceration.*

Counsel recognizes that a valid consideration for sentencing courts is the prospect of an offender's actual or perceived risk of danger to the community. However, current research indicates that sexual offenders have a high prevalence for rehabilitation with the appropriate treatment programs, which can reduce recidivism rates by up to fifty (50) percent. John Borneman, *Can Child Sex Offenders Be Rehabilitated?* SAPIENS ANTHROPOLOGY MAGAZINE at 6 (Jun. 29, 2018). "If treated, very few offenders become recidivists; the vast majority are not at risk of abusing additional children." *Id*.

Experts also note the importance of distinguishing between the different types of offenses and/or offenders. For instance, a 2011 study by Dr. Paula Briggs, MBchB, MRCGP, FFSRH, Gynae, Dip. Venereology, indicated that, "there is a distinction between fantasy-driven and contact-driven solicitation offenders. The former group engages in online activities (such as sexual chat, exchange of pornographic images, or exhibitionism via webcam) that are gratifying in and of themselves . . . but *are not interested in or likely to commit contact sexual offenses against children*."[2] In other words, it is unlikely that an offender whose conduct is limited to online

---

[2] Michael Seto, Ph.D., *Internet-Facilitated Sexual Offending*, Sex Offender Management Assessment And Planning Initiative (July 2015), *available at*:

11

activities (*i.e.* non-contact offense), like Mr. Glowacki, will elevate his actions and commit a contact sexual offense with a child.

This conclusion is echoed by Dr. Michael C. Seto, Ph.D., C.Psych., who conducted an analysis of data of contact sexual offenders. Dr. Seto found that approximately one (1) in eight (8) online offenders also had an official record for a contact offense.[3] However, eighty-four percent (84%) of these dual offenders "claimed their contact sexual offenses preceded their child pornography offenses."[4] **When these two (2) statistics are examined together, the data suggests that less than two percent (2%) of people who commit child pornography offenses continue on to commit contact sexual offenses.**

In general, available data on Internet sex crimes indicates that "Internet offenders as a group, have a relatively low risk of sexually recidivating compared to conventional contact sex offenders."[5] Further, when discussing online sex offender treatment, Dr. Seto explained that "[o]nline offenders appear to be lower risk, on average, than conventional sex offenders, so programs that have created separate streams typically require fewer sessions . . . in keeping with the risk principle."[6] The studies concluded that not only do treatment programs reduce the risk of

---

https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/internetfacilitatedsexualoffending.pdf.
[3] *Id.*; *See also* Michael C. Seto, Internet Sex Offenders, 180, (American Psychological Assn. eds., 2nd ed. 2017).
[4] Michael C. Seto, Internet Sex Offenders, 187, (American Psychological Assn. eds., 2nd ed. 2017).
[5] *See* Michael Seto, Ph.D., *Internet-Facilitated Sexual Offending*, Sex Offender Management Assessment And Planning Initiative (July 2015), *available at*: https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/internetfacilitatedsexualoffending.pdf
[6] Michael C. Seto, Internet Sex Offenders, 228, (American Psychological Assn. eds., 2nd ed. 2017).

recidivism for online sex offenders, but also that they are more effective. Likewise, it is evident that online sex offenders are more amenable to recovery than traditional sex offenders. In essence, the scientific research suggests that the best way to reduce an offender's risk of recidivism is through appropriate treatment and counseling.

In spite of – or perhaps because of – his youthful age, Mr. Glowacki can successfully rehabilitate with the appropriate treatment. He began this in part during counseling at APS and needs to obtain more in-depth treatment while incarcerated. "In therapy, offenders often reveal motives not driven by a desire for sex but rather ones that emerge out of fears of abandonment, emotional loneliness, an inability to trust adults in intimate relations, [and] low self-esteem . . . ." *Id*. His own family notes in their Letters of Support that while Mr. Glowacki was a kind and loving child, he was also quiet and shy. Addressing these underlying issues can help treat Mr. Glowacki so that he can eventually be reincorporated back into society.

A number of district courts have taken an offender's age into account when fashioning an appropriate sentence under 18 U.S.C. §3553(a). *See, e.g.*, *United States v. Hamilton*, 2009 WL 995576, at *3 (2d Cir. 2009) (holding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 9978, 1004 (7th Cir. 2007) (affirming a below-guidelines sentence where the district court's only reason for the variance was that the defendant's age made it unlikely that he would again be involved in another violent crime). Relying only on the U.S. Sentencing Commission's blanket data that groups all offenders by age, regardless of the type of offense, is ill-advised. Even young sexual offenders can be rehabilitated with appropriate treatment, which can greatly reduce recidivism rates in the population.

Respectfully, an additional term of incarceration, beyond the minimum statutory sentence,

is not necessary to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553, and would be a particularly harsh punishment for Mr. Glowacki, who stands a significant chance at rehabilitation with the appropriate treatment.

### c. *Collateral Consequences and the Need for Incarceration.*

It is important to note that Mr. Glowacki stands to suffer severe repercussions for his conviction separate and apart from any sentence imposed by the Court. He has damaged his relationships with his friends and family. Mr. Glowacki's relationships with the people he loves the most have been forever altered.

At twenty-three (23), Mr. Glowacki should still have his full life ahead of him to finish college and begin a career. It is not lost on Mr. Glowacki that even a minimum sentence would cause him to miss major life events. His grandmother likely will not survive to see the man who emerges from prison. More impactfully though, this absence will also be a great detriment to his parents and grandmother. While Mr. Glowacki is incarcerated, his family, who are innocent in all of this, will be left without their son and grandson to assist them as they age.

Furthermore, Mr. Glowacki will be faced with the difficulties attendant to a felony conviction. Again, said convictions will result in his loss of various constitutional rights and privileges. Mr. Glowacki will also be subjected to a significant period of supervision. Finally, Mr. Glowacki will be required to register as a sex offender. These conditions will severely limit Mr. Glowacki's freedom and everyday life and serve as a constant reminder of his poor decisions.

These factors support the conclusion that imposing a longer than minimum sentence would have no impact on Mr. Glowacki's danger to the community. To the contrary, with the appropriate treatment and the consequences weighing on Mr. Glowacki, it is respectfully submitted that he no longer poses a danger to the community and certainly will not by the time he is released from

custody. Simply put, he is unlikely to engage in unlawful conduct in the future. Since the inception of this case, Mr. Glowacki has had the opportunity to reflect upon his actions as well as the consequences that he would suffer should he commit any future criminal offenses. He has admitted his guilt and is fully committed to doing whatever is necessary to atone for his behavior. He has even voluntarily spoken with a counselor to begin addressing his sexual addictions, which he hopes to continue in a Non-residential Sex Offender Treatment Program (SOTP-NR) in prison. Accordingly, counsel submits that a substantial term of incarceration, beyond the minimum fifteen (15) years, is not necessary in order to fulfill the principles and purposes of sentencing contained in 18 U.S.C. § 3553.

        **d.** ***Designation Request.***

Pursuant to 18 U.S.C. § 3621, when deciding on the place of imprisonment for a convicted individual, the Bureau of Prisons ("BOP") may consider "any statement by the court that imposed the sentence." Because this Honorable Court stands in the best position to consider the history and circumstances of this case, Mr. Glowacki respectfully moves this Court to recommend that he be designated to the federal prison camp at FCI Elkton. Mr. Glowacki's treatment in a Non-residential Sex Offender Treatment Program (SOTP-NR) is his utmost concern in terms of considerations for sentencing and placement in a BOP facility. Of the nine BOP institutions that provide Sex Offender Management Programs (SOMP), FCI Elkton is closest in proximity to his family.

**III.**    **CONCLUSION**

Mr. Glowacki respectfully requests that this Honorable Court consider the foregoing facts and circumstances, as well as additional arguments to be adduced at the sentencing hearing, in

15

fashioning a sentence that is sufficient, but not greater than, that which is necessary to comport with the principles and purposes of federal sentencing set forth in 18 U.S.C. § 3553(a).

                                              Respectfully submitted,

                                              */s/ Eric C. Nemecek*
                                              ERIC C. NEMECEK (0083195)
                                              Counsel for Defendant
                                              Friedman & Nemecek, L.L.C.
                                              1360 East 9th Street, Suite 650
                                              Cleveland, OH 44114
                                              P: (216) 928-7700
                                              F: (216) 820-4659
                                              E: ecn@fanlegal.com

## List of Exhibits

***Exhibit A:**   Sexual Behavior Evaluation authored by Gary Echt, LPCC, LICDC, LMHC, SAP, NCGC I, CSAT, Clinical Director of Advanced Psychotherapy Services

**Exhibit B:**   Letter of Support from Matthew and Laura Glowacki

**Exhibit C**:   Letter of Support from JoAnn Glowacki

**Exhibit D:**   Letter of Support from Cheryl Paganelli

**Exhibit E:**   Letter of Support from Alisa Sicker

**Counsel has sought leave of Court to file this document separately and under seal*