UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


UNITED STATES OF AMERICA,        Case No. 1:21-cr-258
                                 Akron, Ohio
            Plaintiff,

      vs.                        FRIDAY, MARCH 4, 2022

JOSHUA GLOWACKI,

            Defendant.


            TRANSCRIPT OF SENTENCING PROCEEDINGS
              *HELD VIA ZOOM VIDEOCONFERENCE*
            BEFORE THE HONORABLE JOHN R. ADAMS
                UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Government:        Michael A. Sullivan,
                           *Assistant United States Attorney*


For the Defendant:         Eric C. Nemecek, *Esquire*


For Probation:             Alexander Lucas




Chief Court Reporter:      Sarah E. Nageotte, RDR, CRR, CRC
                           United States District Court
                           801 West Superior Avenue
                           Court Reporters 7-189
                           Cleveland, Ohio 44113
                           (216) 357-7186


      Proceedings recorded by mechanical stenography, transcript
          produced with computer-aided transcription.

2

|  | 1 | FRIDAY, MARCH 4, 2022 |
|---|---|---|
|  | 2 | - - - |
|  | 3 | (Proceedings commenced at 1:08 p.m.) |
|  | 4 | - - - |
| 13:08:28 | 5 | COURTROOM DEPUTY:  This United States District |
|  | 6 | Court is now in session, the Honorable John R. Adams |
|  | 7 | presiding. |
|  | 8 | THE COURT:  For the record, the Court has |
|  | 9 | before it today Case Number 1:21-cr-258.  The case is United |
| 13:08:41 | 10 | States of America versus Joshua Glowacki.  We're here today |
|  | 11 | for sentencing. |
|  | 12 | Counsel for the Government, are you ready to proceed? |
|  | 13 | MR. SULLIVAN:  Yes, Judge. |
|  | 14 | On behalf of the United States, Michael A. Sullivan. |
| 13:08:52 | 15 | THE COURT:  Thank you. |
|  | 16 | Counsel for the defendant. |
|  | 17 | MR. NEMECEK:  Yes, Your Honor. |
|  | 18 | On behalf of the defense, Eric Nemecek. |
|  | 19 | THE COURT:  Thank you. |
| 13:08:58 | 20 | Mr. Nemecek, does your client consent to proceeding |
|  | 21 | today by way of video? |
|  | 22 | MR. NEMECEK:  He does, Your Honor. |
|  | 23 | THE COURT:  Thank you. |
|  | 24 | Counsel, did you go over the presentence report, |
| 13:09:11 | 25 | review it, and discuss it with Mr. Glowacki? |

1    MR. NEMECEK:  I have, Your Honor.

2    THE COURT:  Mr. Glowacki, have you reviewed

3    the report thoroughly with your attorney?

4    THE DEFENDANT:  I have, Your Honor.

13:09:21  5    THE COURT:  Did you read it in its entirety?

6    THE DEFENDANT:  I have, Your Honor.

7    THE COURT:  All right.  Thank you.

8    The report indicates that there is one unresolved

9    objection by the defendant which we will address.  The

13:09:38 10    defendant objects to paying the additional $5,000 under the

11    provisions of Justice for Victims of Trafficking Act.

12    He indicates that he is of limited assets, he's been

13    incarcerated for ten months, and indicates that he may not

14    have any resources to which to pay the $5,000.  It does

13:09:56 15    appear that the defendant is indigent.  However, there will

16    be some restitution that will be required.

17    We will hear from the parties and the Government

18    before I make a final determination about the $5,000

19    so-called special assessment that's required under the

13:10:13 20    Justice for Victims of Trafficking Act of 2015.

21    Any other objections at this time the Government would

22    like to raise?

23    MR. SULLIVAN:  No, Judge, not on behalf of the

24    Government.

13:10:25 25    Thank you.

4

1          THE COURT:  Counsel for the defendant.

2          MR. NEMECEK:  Yes, Your Honor.

3      The only other issue that I would like to address,

4  other than what the Court just specified, is the amount of

13:10:34  5  restitution request.

6      The reason it wasn't included as an initial objection

7  is because I don't think that they received the letter until

8  after the first report had already been issued and

9  disclosed, so we didn't even get a chance to formally

13:10:46  10  object.

11      But I guess I would like to be heard on that issue as

12  well whenever the Court intends to address that.

13          THE COURT:  Well, we can address it now before

14  we go further, if you'd like.

13:10:54  15      What is the objection to the -- to a request for

16  restitution?

17          MR. NEMECEK:  The objection is just to the

18  amount of the request, Your Honor.  I don't believe that

19  there's sufficient evidence in terms of proximate cause to

13:11:11  20  justify a $10,000 award in this case.

21      The Court's aware from the presentence report, as well

22  as the sentencing memorandum, Mr. Glowacki possessed a total

23  of I believe nine images.  There's no evidence that any of

24  them were ever distributed.  He took no part in any sort of

13:11:24  25  production of the image in question.  And I don't believe

1     that there's anything specific to his case or his conduct in

2     the restitution request that would somehow justify the

3     amount that's being requested.

4          So with that in mind, I'd ask that the Court, you

13:11:41  5     know, given the mitigating circumstance with respect to the

6     conduct, especially as it relates to the restitution, I'd

7     ask the Court to impose the minimum $3,000 restitution

8     amount.

9                    THE COURT:  Counsel for the Government.

13:11:53 10                    MR. SULLIVAN:  Judge, we would, you know, rely

11     on your discretion in setting the restitution amount.

12          But I'd point out that, you know, if you look at the

13     total losses that they have established in their filing with

14     the Court that I -- that I passed on to Mr. Nemecek, 10,000

13:12:11 15     is clearly just a small percentage of that, and we think

16     that it probably is justified by their filing.

17          But we'll rely on your discretion in setting the

18     amount.

19                    THE COURT:  Well, in terms of my discretion,

13:12:25 20     I'm not required, as I understand it, to simply limit myself

21     to what the defendant's current resources are but I may

22     consider the level of his education, whether he will have --

23     in the future may have the ability to pay this restitution,

24     including paying at least ten percent of his gross income

13:12:45 25     while he's in custody, if he does work while he's in

1    custody.

2        Am I correct in that assessment?

3            MR. SULLIVAN:  I think you are, Judge.

4        I think Mr. Nemecek's argument, the way I took it, was

13:12:58 5    more on whether or not we could show that there was evidence

6    that he was responsible for $10,000 worth of harm, not

7    necessarily that he wouldn't be able to eventually pay it.

8        That's why I'm just saying that I think that the

9    filing with the Court shows that the total amount of harm is

13:13:15 10    pretty enormous and that this is just a small percentage of

11    it and it is therefore justified.

12            THE COURT:  And this case is a little

13    different than others.  We have identified that one of the

14    images contained an identifiable victim, right?

13:13:29 15            MR. SULLIVAN:  Yes.

16            THE COURT:  Okay.  So it's not as if in many

17    of these cases we're not able to fully identify the victim,

18    but, here, we have been able to identify the victim.

19            MR. SULLIVAN:  That is correct.

13:13:42 20            THE COURT:  So it's kind of hard to quantify

21    the harm to the victim.

22        Mr. Glowacki paid, according to the report,

23    approximately $12,000 in U.S. currency, he used Bitcoin, to

24    commit the offense conduct here.

13:14:04 25        Is that correct?

| | 1 | MR. SULLIVAN:  I don't recall if it was that |
| | 2 | much. |
| | 3 | THE COURT:  You may not have it, but the PSI |
| | 4 | in the confidential pages indicates Mr. Glowacki used |
| 13:14:21 | 5 | Bitcoin, a virtual currency, to make a payment to obtain |
| | 6 | child sexual abuse materials.  Mr. Glowacki paid 1.75 |
| | 7 | Bitcoin, which is approximately $12,000 in U.S. currency. |
| | 8 | So it is -- obviously, it fluctuates. |
| | 9 | MR. NEMECEK:  Judge, if I may. |
| 13:14:41 | 10 | My understanding from that statement, and I'm reading |
| | 11 | it from the PSR now, is that that address, the address in |
| | 12 | question where the Government claims that Mr. Glowacki made |
| | 13 | a Bitcoin payment, I think that what the PSR is stating is |
| | 14 | that that address received a total, not necessarily from Mr. |
| 13:14:58 | 15 | Glowacki but from potentially, you know, other users, a |
| | 16 | total of 1.75 Bitcoin which had an approximate value of |
| | 17 | 12,000. |
| | 18 | I don't think Mr. Glowacki paid 1. -- 1.75 Bitcoin.  I |
| | 19 | don't think that was the allegation. |
| 13:15:14 | 20 | THE COURT:  I don't want to get ahead of |
| | 21 | myself here, but wouldn't an individual -- wouldn't it have |
| | 22 | some bearing on an individual's acceptance of |
| | 23 | responsibility, remorse that they're willing to pay |
| | 24 | restitution?  Particularly when we have a victim here that's |
| 13:15:30 | 25 | been identified.  Wouldn't that go to someone saying, maybe |

1       not in a technical sense but in the generic sense, that I'm

2       admitting the harm, the wrongfulness of my conduct,

3       including the harm that have been visited on this victim,

4       and so, I'm willing to pay restitution, knowing that when

13:15:45  5       I'm released I'm going to have a job and I'm going to have

6       some ability to pay.

7               $10,000 is, candidly, a very nominal sum when you look

8       at the victim's injuries here, right?

9                       MR. NEMECEK:  I agree, Your Honor.

13:15:59 10              And in no way am I suggesting or is Mr. Glowacki

11       suggesting that he's not amenable to paying restitution.

12              My point in making the objection or the argument is

13       under Supreme Court precedent in *Paroline*, you know, the

14       Court's required to make a determination as to the proximate

13:16:14 15       cause, so whether or not there's evidence to support that

16       Mr. Glowacki's conduct, that that proximately caused $10,000

17       worth of value.

18              So we're just asking the Court to make a determination

19       as to whether or not the evidence supports that.  And I'm

13:16:27 20       not disputing the harm that this victim suffered, or even

21       the figures that she has in terms of I think it's

22       approximately like $6 million in losses that she's trying to

23       recoup.

24              But I would note that it appears that there's, like,

13:16:41 25       1,500 orders out already for this particular victim in terms

1      of other cases where they've made requests, and if you just

2      do the math, at 1,500, if she asked for 10,000 in all of

3      those cases, that would be I think, like, $15 million.  So

4      my point is she's either -- you know, the request hasn't

13:17:01  5      come for 10,000 in all of these cases or it hasn't been

6      ordered at 10,000 in all of these cases.

7          And if we look at Mr. Glowacki's conduct and the

8      factors that the Court's required to consider, I just

9      don't -- I don't believe that, you know, his possession of

13:17:15 10      nine images, having not been involved in any distribution

11      and not involved in the actual production, I don't -- I

12      don't believe that that would justify an award of 10,000.

13      I'm not saying he's not willing to pay restitution, it's

14      just calculating the correct amount.

13:17:29 15              THE COURT:  Really?  So how do you come up

16      with that idea?

17          When you think about the harm to these victims, even

18      one picture which is being viewed on the internet by Mr.

19      Glowacki, I mean, you think 10,000 is too much, huh?  Is

13:17:44 20      that what you're telling me?

21          When you look at the harm to the victim -- did you

22      read the victim statement here?

23              MR. NEMECEK:  I did, Your Honor.

24              THE COURT:  All right.  Did you read the harm?

13:17:53 25      The psychological harm?  All of the -- her health?  All of

1      the harm that this victim has suffered?  And you say $10,000

2      from Mr. Glowacki is too much?

3                    MR. NEMECEK:  Your Honor, I'm just pointing

4      out that the Court is required, under Supreme Court

13:18:08  5      precedent, to consider various factors and to be able to

6      justify that Mr. Glowacki's conduct and offense proximately

7      caused X amount of restitution in this particular case.

8          I'm not disputing that she suffered.  And if the Court

9      determines that 10,000 is the number, then that -- you know,

13:18:26  10      we will accept that.  I just -- I'm making the argument for

11      purposes of the record because there are various findings

12      and considerations that the Court has to make, and so,

13      that's -- that's all that I am doing with the argument,

14      Judge.

13:18:39  15                    THE COURT:  Well, I just -- I'm being blunt

16      about it.  I find 10,000 to be nominal when you look at the

17      harm to these victims of this kind of behavior and you look

18      at the fact that you have individuals like Mr. Glowacki

19      who's the one that drives these markets, and, you know, if

13:18:56  20      he's objecting to the $5,000 under the Act, which is

21      designed to try to help victims, he's objecting to that

22      5,000, and now he's saying:  I don't want to pay restitution

23      and, if I do, I want to pay just a nominal sum.

24          And I can't help but think, well, that doesn't really

13:19:14  25      give me a -- it doesn't give me a whole lot of comfort that

| | 1 | he's really understanding the impact to this victim even |
| | 2 | after reading her victim impact statement. |
| | 3 | MR. NEMECEK:  Your Honor, I do believe that he |
| | 4 | does.  I do believe that he's sincerely remorseful.  And |
| 13:19:32 | 5 | you'll hear from him today. |
| | 6 | And this is as his attorney, me, making the legal |
| | 7 | argument as it relates to the restitution.  I'm not |
| | 8 | objecting to restitution.  I'm not disputing the victim's |
| | 9 | harm that she suffered or the losses.  I'm just asking the |
| 13:19:48 | 10 | Court to take into consideration the factors and make a |
| | 11 | determination as to the appropriate restitution amount. |
| | 12 | THE COURT:  Well, you used the $15 million |
| | 13 | number.  So do you think $15 million is too much for someone |
| | 14 | who's been sexually abused and then had their images posted |
| 13:20:06 | 15 | all over the internet to be seen by anyone out there for |
| | 16 | really -- just for the rest of her life, they're never |
| | 17 | coming down, they're on the internet?  Do you think 15 |
| | 18 | million is too much? |
| | 19 | MR. NEMECEK:  No, I'm not saying that, Judge. |
| 13:20:18 | 20 | THE COURT:  Okay.  Well, you're using that |
| | 21 | number saying, well, she's going to get -- if you |
| | 22 | extrapolate, she may get 15 million, so, gee, and we're |
| | 23 | asking your client to pay $10,000 and you think that's a lot |
| | 24 | or too much. |
| 13:20:29 | 25 | MR. NEMECEK:  No.  I -- |

1          THE COURT:  And that --

2          MR. NEMECEK:  And maybe I'm not doing the best

3     job of conveying what I was attempting to convey, which is

4     essentially that there were a number -- you know, the PSR

13:20:41  5     notes that there were a number of orders out already from

6     other courts in other cases, you know, where restitution had

7     been ordered, and it indicated that she had not -- I don't

8     believe that she had recovered or had recovered close to

9     half of what the total out-of-pocket expenses are, which is,

13:20:57  10    you know, 6 million.

11         So I was simply indicating that the $10,000 request

12    here, you know, I don't know if that's a request that's made

13    in every case, but, you know, accepting the rest of what's

14    in the PSR related to that as true, it hasn't been ordered

13:21:14  15    in every case I would say if that has been the request.

16         That's all I'm saying.

17         THE COURT:  Isn't it also possible that many

18    of these offenders who are engaged in this conduct are

19    imprisoned for periods of time that may even result in their

13:21:29  20    being incarcerated for a lifetime, given the nature of some

21    of these offenders, they're incarcerated for 10, 15, 20

22    years, so -- or more, so that restitution is certainly hard

23    to come by.  We can order it, but collecting it is another

24    matter.

13:21:45  25         I guess I'm just struggling with the idea that Mr.

1       Glowacki's conduct here in viewing these pictures, you know,

2       he's paying to view them by the by.  I don't know how much

3       he's paid, but he's paying to view them.  But yet, you, as

4       his counsel, are arguing that $10,000 is just way too much

13:22:03  5       for this conduct to reimburse this victim for what she's

6       suffered, including suffered at the hands of your client by

7       the by.

8            I guess we'll just have to agree to disagree.  I think

9       $10,000 is kind of nominal, bluntly, given his age, given

13:22:20 10       how young he is, and when he'll be released, whether it's 15

11       or 20 years or what have you, he'll be able to obtain

12       employment, and I think it's a sign of someone's true

13       remorse and true understanding of the victim's suffering by

14       saying:  I'm going to pay, I want to pay for the harm I've

13:22:38 15       caused here, even my limited role in paying for that harm.

16       Someone who doesn't want to do, hmm, I guess I have to

17       wonder.

18            Anyone else wish to be heard on that issue?

19            Mr. Sullivan, do you have any other comments or

13:22:56 20       issues, anything you'd note further about all of this?

21                 MR. SULLIVAN:  No, I don't, Judge.

22            No, thank you, Judge.

23                 THE COURT:  All right.  Counsel, I'll take it

24       up when we finalize the sentencing here.  If that's the

13:23:07 25       objection, I'll address it.

1          Go ahead.  Anything else you'd like to add, counsel

2     for the Government -- counsel for the defendant, I should

3     say?

4                    MR. NEMECEK:  No, Your Honor, not on those

13:23:15  5     issues.

6                    THE COURT:  Thank you.

7          The Court's required to properly calculate the

8     advisory guidelines here.  The guideline range is -- there's

9     a calculation which is somewhat beside the point because of

13:23:24 10     the mandatory minimum of 15 years by statute.

11          Here, we have a base offense level of 22.  Two-level

12     enhancement at paragraph 25.  And four levels at 26.  27 is

13     a specific offense characteristic, a two level.  The

14     adjusted offense level is 30.  Acceptance of responsibility,

13:23:46 15     two levels.

16          Does the Government seek the third?

17                    MR. SULLIVAN:  Yes, Judge, we do.

18          Thank you.

19                    THE COURT:  He'll be a 27.

13:23:54 20          At 27, Criminal History Category I, would be 70 to

21     87 months.

22          I will just note, as we will discuss later, the

23     defendant has one prior conviction for pandering sexually

24     oriented material involving a minor and the various charges

13:24:10 25     connected therewith at paragraph 38.  That offense conduct

|  |  |
|---|---|
| 1 | occurred not too -- on 10-5-2018, not too terribly earlier |
| 2 | than this offense conduct. |
| 3 | Counsel for the Government, do you have any objection |
| 4 | to the Court's advisory guideline calculation? |
| 13:24:29  5 | MR. SULLIVAN:  We do not. |
| 6 | Thank you. |
| 7 | THE COURT:  Counsel for the defendant. |
| 8 | MR. NEMECEK:  No, Judge. |
| 9 | Thank you. |
| 13:24:34  10 | THE COURT:  All right.  Counsel, any |
| 11 | statement, argument you wish to make.  I've read the brief, |
| 12 | the evaluation, letters, all the materials submitted on |
| 13 | behalf of the defendant.  Tell me why it is that the |
| 14 | 180 months is the appropriate sentence, taking into |
| 13:24:49  15 | consideration the fact that he has a prior conviction, was |
| 16 | on probation at the time of this offense, and was supposedly |
| 17 | engaging in counseling, but yet, we have this same activity |
| 18 | occurring while on probation and while supposedly |
| 19 | successfully undergoing counseling. |
| 13:25:06  20 | MR. NEMECEK:  Thank you, Judge. |
| 21 | A lot of the information and arguments we have are set |
| 22 | forth in the brief, so I will just highlight a few of the |
| 23 | arguments in response to the Court's questions. |
| 24 | I would note for the record that Mr. Glowacki does |
| 13:25:18  25 | accept responsibility in this case.  He's sincerely |

1    remorseful for any harm that he caused, not only to the

2    victims in this case but also to his family.  He's had ample

3    time to reflect upon his conduct and the significant

4    penalties that he's facing.  He's been incarcerated for

13:25:35  5    almost a year at this point in time in connection with the

6    case.

7        He's a young man who's obviously struggled with mental

8    health issues for most of his adult life, diagnosed with

9    depression, anxiety.  He's taking medications.  And

13:25:48 10    following his arrest in connection with the state case, the

11    Court's aware, he did undergo a psychosexual evaluation and

12    he was determined to have a sexual addiction.  They

13    recommended that he engage in individual and group

14    counseling, and he did do that.  I believe he was in

13:26:04 15    counseling for approximately three years prior to his

16    surrender in this case.

17        I do believe, and his counselors have indicated as

18    well, that he did make progress in treatment.  I think Josh

19    will be the first to tell you that he thought the treatment

13:26:17 20    was going well and that he had his issues under control.

21    But, obviously, as evidenced by, you know, this case, that

22    wasn't accurate.  He understands the importance of

23    continuing with treatment even despite the current setback.

24        As the Court is aware or may recall, we had filed a

13:26:36 25    motion shortly after his arraignment requesting that he be,

1    you know, given permission to have unmonitored

2    communications with his counselor because he sincerely had

3    an interest in continuing with counseling, and the Court did

4    issue the order, but, unfortunately, the institution where

13:26:52   5    he was at, which was the Mahoning County Jail, they weren't

6    able to make accommodations to allow for the unmonitored

7    communications, so he hadn't been able to continue on with

8    the treatment.

9         But he has expressed an interest in reengaging in

13:27:06  10    treatment with the programming available through the BOP, as

11    well as upon his release to get back into treatment.  He

12    understands that it's a lifelong commitment and he is

13    interested in -- in continuing on with that.

14         Despite his current situation, he still maintains the

13:27:23  15    love and support of his family and friends, some of whom

16    have submitted letters in support for this Court's

17    consideration.  I know his parents are both, I guess, on

18    this Zoom call to show their support for Josh as well.

19         In considering his conduct in this case, and comparing

13:27:39  20    it to other defendants, I think there are a few notable

21    points.  As I mentioned before, there were only nine images

22    that were found on his phone.  No evidence that he ever

23    distributed those images.  No evidence that he was, you

24    know, engaging in communications or conversations with

13:27:57  25    other, you know, individuals engaged in this same sort of

1    offense.  And no indication that he ever was engaged in any

2    sort of contact offenses with minors.

3         As the Court determined at the outset, his initial

4    calculation was deemed to be a 27, total offense level 27,

13:28:19  5    with a recommended prison sentence of 78 to 97 months;

6    however, due to his prior offense, he's subject to that

7    15-year mandatory minimum sentence by statute, which I would

8    note, as the Court's aware, is more than double the

9    recommended sentence, what the sentence would otherwise be.

13:28:36  10         So I think, you know, certainly not discounting the

11   fact that he was on probation or that he had a prior

12   offense, but I think that that is significantly taken into

13   account by the guidelines to the extent that his, at least,

14   you know, the recommended sentence is approximately double

13:28:51  15   what it otherwise would have been.

16         I would note that he's also going to be subject to a

17   significant term of supervision upon his release with strict

18   terms and conditions, including presumably that he would

19   continue on with treatment, that he have limited access to

13:29:08  20   the internet as well.  So I think that that, in conjunction

21   with, you know, his earnest efforts and commitments to

22   treatment and his youthful age, should help to hopefully

23   reduce the likelihood of recidivism.

24         With that said, I don't believe that a sentence beyond

13:29:24  25   the mandatory minimum sentence is necessary to serve the

1    purposes and principles of sentencing, and I would ask the

2    Court to impose the 15-year year sentence, followed by a

3    lengthy term of supervised release, just to ensure that he

4    gets the necessary treatment and avoids any similar offenses

13:29:36    5    in the future.

6          Thank you, Judge.

7          THE COURT:  Thank you, Counsel.

8    His earlier case in Cuyahoga County did involve,

9    however, the sale, distribution of materials, right?

13:29:49   10          MR. NEMECEK:  I believe that the facts of the

11   case were that he was obtaining certain child pornography

12   files through like a peer-to-peer network, and so, during

13   the course of the downloading, those files are made

14   available, you know, the default setting is to have those

13:30:09   15   files available for other users to download, and so, those

16   files or some of those files were downloaded by law

17   enforcement during the course of the undercover

18   investigation.

19   But I don't believe that there was evidence that he

13:30:21   20   specifically, like, intentionally sent the images to anybody

21   else or reposted them or distributed them directly to

22   anybody.

23          THE COURT:  That's -- okay.  Just curious.

24   Because the way the indictment, the offense conduct reads in

13:30:36   25   that earlier state case, there was, what, 15 counts?

1          MR. NEMECEK:  I believe so, yes.

2          THE COURT:  And at least Counts 3 through 14

3     alleges that the defendant did, with knowledge of the

4     character of the material or the performance involved,

13:30:53 5     advertise for sale or dissemination, sold, distributed,

6     transported, disseminated, exhibited, or displayed material

7     of a minor.

8          So wouldn't that lead one to believe that indeed it

9     wasn't just possession or that, in fact, he was distributing

13:31:10 10    it to others?

11         MR. NEMECEK:  Yes.  I don't believe there was

12    a dispute that it was disseminated, at least to the extent

13    that the undercover officers were able to download files

14    from him.

13:31:19 15         I guess maybe it's -- and I'm not trying to, I guess,

16    get into semantics, but what I was saying is he didn't --

17    you know, he wasn't e-mailing them or sending them directly,

18    but they were made available once they were downloaded, or

19    in the process of downloading to his device through the

13:31:37 20    default setting of the program that he used to obtain the

21    information, it makes those same files available for other

22    users to download from him.

23         So I -- I think that that's what is accounted for in

24    the statute, and maybe it's just the use of the word

13:31:52 25    disseminated or made available or advertised, but that was

1     essentially the conduct, that it was peer-to-peer software

2     that he used.

3                     THE COURT:  So he wasn't involved in the

4     sharing?  He wasn't sharing pictures or exchanging pictures

13:32:04  5     or things of that nature?

6                     MR. NEMECEK:  Not directly.  Other than to say

7     that those -- that files that were on his computer were

8     available for other users to download who were using the

9     same software, but he didn't take any steps beyond having

13:32:18 10     those on his system to send those to anybody or to make them

11     available to anybody.

12                     THE COURT:  Mr. Sullivan, what do you know

13     about that?

14                     MR. SULLIVAN:  Judge, I believe that's

13:32:31 15     accurate.  I'm actually looking through the search warrant

16     right now for the Cuyahoga County case.

17          I believe that the defendant was using BitTorrent,

18     which is a peer-to-peer network, and I believe that he

19     was -- the search warrant was conducted by the Ohio Internet

13:32:48 20     Crimes Against Children Task Force.  I guess they saw that

21     he was -- he had files.

22          So he was -- his IP address was sharing them on the

23     network through BitTorrent, but that could be, as Attorney

24     Nemecek indicated, it could be more passive sharing, I guess

13:33:08 25     would be the term, as opposed to active.  I mean, he's using

1    peer-to-peer, so his files would be available for others to

2    download from him, and I believe that was the nature of the

3    connection.

4              THE COURT:  Sounds like you just don't know.

13:33:21 5              MR. SULLIVAN:  Well, no, I -- again, I'm

6    reading through the -- the affidavit for the search warrant

7    was based strictly on peer-to-peer evidence.  I have -- and

8    I'll pull up the indictment as well from Cuyahoga County.

9              THE COURT:  You're talking about, just so it's

13:33:41 10   clear for the record, the indictment in the other state

11   case?

12             MR. SULLIVAN:  Yes.  Yes.  Yes.  So --

13             THE COURT:  What does it tell you?  Anything?

14             MR. SULLIVAN:  It's just -- so, here, it

13:33:51 15   either -- let me see.  I have the report here.  I'm looking

16   at the report right now.  The indictment just is -- it's

17   statutory language.

18        So I'm just reading through the report of the

19   investigation here.  So Joshua was asked about child

13:34:29 20   pornography on his computer.  He believed he had used

21   Utorrent within the last three to six months to download

22   child pornography involving children.

23        So, yeah, so, I mean, it's -- the nature of the case

24   was -- it was using peer-to-peer software by Mr. Glowacki to

13:34:49 25   obtain child pornography.  But in the course of obtaining it

1    using peer-to-peer software, it made it available to others

2    to download from his computer.

3                    THE COURT:  Do you have -- as to the state

4    case, do we know how many images were involved?  Does it

13:35:03   5    give that information there?

6                    MR. SULLIVAN:  Let's --

7                    THE COURT:  Sorry to focus on it, but it also

8    is relevant to how long -- the extent of his supervision,

9    how supervised release will -- it's relevant to conditions

13:35:18 10    of supervised release and they're like the same in some

11    respect.

12                    MR. SULLIVAN:  I'm pulling up the forensic

13    report right now.

14        So on the one hard drive, there were nine movies, 37

13:36:22 15    pictures.  Then in unallocated space, there were another ten

16    pictures.  On another hard drive, there were 21 movies and

17    two pictures.  And then they -- and in unallocated, another

18    19 movies.  I think that was it.

19                    THE COURT:  Which under the guidelines is they

13:36:51 20    would -- the movies would convert to how many images?

21                    MR. SULLIVAN:  75 per, so on the -- on the

22    nine movies, that would be -- and the 19 movies would be

23    another, what, 1,300, so probably about 2,000.

24        Then, unallocated, there was 21 movies there so --

13:37:22 25                    THE COURT:  Another 25 movies?

1        MR. SULLIVAN:  There were -- so in allocated

2    space, there were nine movies and 21 movies.  And then, in

3    unallocated space, there were an additional 19 movies.

4        As far as the, in allocated space, that would be

13:37:46 5    equivalent to 2,250.  And then, the additional 19 in

6    unallocated space would be an additional 1,425.

7        THE COURT:  All right.  Thank you.

8        Counsel for the defendant, do you want to add

9    anything?  Since I'm not sure if you represented him in the

13:38:07 10   state court case.

11       MR. NEMECEK:  I did, Your Honor, and I -- I

12   don't believe that I would add anything other than what's

13   been said up to this point.

14       THE COURT:  Okay.  Thank you.

13:38:17 15   In that court's case, he received two years' community

16   control on May 21st, 2019.

17       So having said that, anything further you'd like to

18   make?  Any terms or any additional argument you'd like to

19   make?  Counsel for the defendant, anything else before I

13:38:37 20   hear from the defendant?

21       MR. NEMECEK:  No, Your Honor, not at this

22   time.

23       THE COURT:  Thank you.

24       Mr. Glowacki, what would you like to state on your own

13:38:44 25   behalf?

1          THE DEFENDANT:  Your Honor, first, I would

2     like to apologize to my victims who, you know, I -- I admit

3     to knowingly inflicting harm by viewing those materials, my

4     family for not only putting them through this the first time

13:39:04  5     but doing this a second time, to Judge McGinty who tried to

6     see the best in me and I will acknowledge gave me a sentence

7     that was a slap on the wrist for what I should have received

8     and I so failed in his trust for me.

9          I'd also like to apologize to my counseling and my

13:39:22 10     support group at Advanced Psychotherapy Services because I

11     not only betrayed their trust but I cast them and other sex

12     offenders that are looking to actually fix and improve

13     themselves in the worst light.

14          Again, it cannot be understated that what I've done is

13:39:41 15     unforgiveable.  And again, I am on probation at the time of

16     the reoffense.  And I have already failed once while in

17     treatment, but I do hope to still continue treatment, both

18     during my incarceration and after serving the sentence you

19     deem fit, whatever that may be.

13:40:00 20          I allowed myself to be complacent with my therapy.  I

21     really should have been trying to do more with it.  I

22     allowed myself to fall off the wagon.  And I intend to try

23     to become more open to any support systems I can have, both

24     again in incarceration and once I finish my sentence, to

13:40:19 25     also increase the intensity of my treatment, going to

1    more -- more support groups, trying to begin 12 steps, other

2    programs I can try to find in order to prevent such failures

3    in the future.

4        Thank you, Your Honor.

13:40:33  5        THE COURT:  Thank you.

6        Counsel -- all right.  Thank you, sir.

7        Counsel, what's the Government's position, please?

8            MR. SULLIVAN:  Thank you, Judge.

9        Judge, I -- we're asking for a guideline sentence

13:40:46 10   which, in this case, would be the 15 years.  I would like to

11   just comment on a couple of things briefly.

12        One, you know, Mr. Nemecek made a point as to the

13   number of images being low in this case, and I don't think

14   that really is all that relevant because the defendant was

13:41:00 15   clearly using sophisticated technology in order to try to

16   hide his activity.  He was going on the dark web to buy

17   access to the child pornography, so he was -- he had already

18   been caught once and he was trying to cover his tracks.  So

19   the fact that he was caught not only once with child

13:41:17 20   pornography is not only surprising or I think really quite

21   relevant.

22        I guess the -- you know, the really notable part about

23   this, and it's more of an issue for the state court, but --

24   is that that state court judge was put on notice, there was

13:41:31 25   a psychological report that he had before him when he

1    sentenced this defendant on 14 F-2s that carried

2    two-to-eight years in prison with a presumption of prison,

3    and the report said that he was highly likely -- that he was

4    likely to reoffend, high-risk of reoffending, and he was

13:41:49   5    given two years of community control sanction.

6         It didn't take long for the defendant to prove that

7    the psychological report was right.  Within months of being

8    on probation, he was buying cryptocurrency so he could go on

9    the dark web and find child pornography.

13:42:05  10         So we believe the guidelines here are -- the minimum

11    mandatory is certainly justified, even though it's higher

12    than the guidelines that have been calculated, given the

13    defendant's prior, 15 years is certainly well earned.

14              THE COURT:  All right.  Counsel, thank you.

13:42:19  15         I'm required to make certain findings under 18,

16    3553(a).

17         We'll begin with the nature and circumstances of the

18    offense.  They are that on October 20th, 2020, an FBI

19    special agent received records from Coinbase, a virtual

13:42:36  20    currency company associated through Bitcoin.  A virtual

21    currency address is known to be associated to dark net sites

22    that advertise child sexual abuse material.

23         The records revealed an account associated or

24    registered to the defendant.  And the defendant sent Bitcoin

13:42:53  25    payments to an address associated with a dark net website

1    that advertised child sexual abuse material.

2         On December 24th, 2019, the defendant's Coinbase

3    account sent two payments to a Bitcoin address for

4    approximately 1.75 Bitcoin, the PSI says approximately

13:43:13 5    12,000 in U.S. currency, which was associated to a dark net

6    website that advertised:  Terabytes of child porn private

7    site.

8         On March 23rd, 2021, FBI special agents and

9    investigators executed a search warrant at the defendant's

13:43:28 10   residence and seized the defendant's Samsung cell phone.

11   They located the following on the defendant's Samsung cell

12   phone:  Nine images categorized as child exploitation, age

13   difficult, with three images categorized as possible child

14   pornography, and then there were 12 images that were

13:43:47 15   categorized as CGI animation depictions, images of possible

16   prepubescent females.

17        There were three images that contained visual

18   depictions of real minors engaged in sexually explicit

19   conduct with adults and other minors, including exhibition

13:44:03 20   of genitals or pubic area and bestiality.  One image had an

21   identified victim.  And then the details of these offenses

22   are outlined in paragraphs 8 through 15 of the PSI.  I won't

23   spread it on the record.  It's there, and it's clear what

24   the defendant's proclivities are, and let's be blunt about

13:44:31 25   it.

1          So in terms of the history and characteristics of the

2    defendant, Mr. Glowacki is a 24-year-old male with no

3    history of violence.  He has one previous adult conviction

4    for pandering sexually oriented material involving a minor.

13:44:49    5    There were -- I think there were a total of 14 counts, they

6    were all felonies of the second degree, for which the

7    defendant received probation on May 21st, 2019.  And then

8    this offense conduct began shortly thereafter on

9    December 24th, 2019.

13:45:07   10          Despite the fact that he claims he was undergoing

11    counseling and that he was undergoing counseling, it

12    appears, but, obviously, that was not effective and,

13    obviously, the defendant engaged in this pattern of

14    activity, which is clandestine pattern.

13:45:27   15          He was raised by his parents in a good neighborhood in

16    Cleveland, Ohio.  He didn't witness any substance abuse or

17    violence in his childhood home.  He has one sibling, age 22.

18    He's never been married.  He has no children.

19          He has no known physical health concerns, but

13:45:43   20    apparently was diagnosed with depression and general anxiety

21    disorder in 2019.  I'm not a psychiatrist, but some of this

22    I would suspect is related to the fact that he was being

23    apprehended, charged, and was dealing with the legal system

24    in terms of his criminal conduct here; although, again, he

13:46:04   25    carries those diagnoses.

1    He completed a sex offender assessment on March 12th,

2    and the assessment determined the risk of reoffending was

3    above average.

4    Mr. Glowacki has suicidal thoughts since the age of

5    16, at least so he claims, and has -- was admitted into a

6    psychiatric ward approximately one week prior to his arrest

7    on this offense.  Apparently the search had been conducted

8    earlier.

9    He was last employed as a cashier in July of 2020.  He

10   has a metalworking certificate he obtained in March of 2021.

11   In terms of the sentencing disparities, again, here,

12   we have a mandatory minimum, so the guideline calculation

13   and sentencing disparities would be somewhat beside the

14   point.  98 months was the median length of imprison --

15   average length was 98 months.  Median length was 120 months.

16   Again, that's utilizing offense level 27, with a criminal

17   history category -- this says II, but it should be I.  But,

18   again, the mandatory minimum is in play here.

19   In terms of the need for the sentence imposed, the

20   instant offense, federal offense is Mr. Glowacki's second

21   sex offense conviction.  He used Bitcoin to make a payment

22   to child sexual -- to obtain child sexual abuse material.

23   Now, the PSI and the Probation Office seems to believe

24   Mr. Glowacki paid, again, 1.75 Bitcoin, which was

25   approximately $12,000 in U.S. currency, and that fluctuates,

1    so that market is volatile.  Be that as it may, however much

2    he paid, he clearly sought it out and he certainly paid

3    money, and perhaps even a large amount of money, to obtain

4    this sexual abuse material.

13:48:01  5    His payment was sent to a virtual currency exchanger

6    based in Russia.  He made the Bitcoin payment to access the

7    dark web site that had over a dozen images containing child

8    pornography, and the Bitcoin payment accessed a larger

9    collection of child pornography.

13:48:19 10    Probation Office believes, and of course I agree, that

11   the phone, the images contained on Mr. Glowacki's phone are

12   troubling just focusing on the nine images.  Of the three

13   images -- there were nine images and then there were three

14   additional images.  One of the three images was an image of

13:48:40 15   a prepubescent female, approximately six to nine years old,

16   naked and tied to a chair, facing down with an adult male

17   holding her from behind.  The second image was an image of a

18   prepubescent female, approximately 11 to 13 years old,

19   performing oral sex on an adult male.  And an image --

13:48:59 20   included a image was a prepubescent male, approximately

21   eight to ten years old, with his pants down and apparently

22   having sexual contact with a female of the similar age.

23   And the Probation Office on February 7th learned that

24   one of the images contained an identified victim.

13:49:19 25   Documented -- documentation submitted on behalf of the

1    victim contained over 400 pages of detailed records of the

2    victim's ongoing victimization, personal and economic losses

3    due to the initial sexual abuse she endured as a juvenile,

4    and the ongoing circulation of the images of her sexual

13:49:37 5    abuse.  The documentation estimated that the victim has a

6    total of over $6 million in economic losses due to no

7    limited -- not limited to medical costs, counseling

8    expenses, lost earnings, expenses paid for restitution

9    documentation.  And the victim impact statement the victim

13:49:56 10    submitted detailed the victim's past, ongoing struggles due

11    to the circulation of her sexual abuse images.

12         The Probation Department recommends the $10,000.  I

13    agree.  If counsel would like the calculation, first of all,

14    there are calculations set forth in the PSI at page 18 which

13:50:15 15    outlines the full amount of Lily's, as her name is referred

16    to, economic losses are spelled out there itemizing the over

17    $6 million, not including attorney fees allowable by

18    statute.

19         The victim also asked for a no contact order.  And I

13:50:35 20    will quote from paragraph 19:  We have seen some defendants

21    are trading images with Lily's real legal name as part of

22    the file title.  Lily's been personally contacted by child

23    pornography enthusiasts who made offensive and frightening

24    remarks and sought in-person contact with her.  I myself

13:50:54 25    have received correspondence recently from a federal inmate

1    requesting that I pass along apologies to her.  What is

2    alarming is that he uses her legal name and says that

3    everyone in his institution who has committed a child

4    pornography crime knows of her.  We would appreciate,

13:51:10  5    therefore, a no contact order using her pseudonym be

6    requested of the Court.  That's at paragraph 19.

7        Paragraph 20 also is a victim impact statement which

8    is dated August 20th, 2019, and the victim states just --

9    I'll just touch on some of it because, again, the $10,000 I

13:51:30 10    believe is nominal for a young person like this defendant

11    who hopefully when he's released from prison will go to

12    work, and I would think that agreeing to pay restitution

13    would be a sign of true remorse.

14        The victim states:  I live every day with the horrible

13:51:44 15    knowledge that many people somewhere are watching the most

16    terrifying moments of my life and taking grotesque pleasure

17    in them.  I am a victim of the worst kind of exploitation:

18    Child pornography.  Unlike other forms of exploitation, this

19    one's never ending.  Everyday people are trading and sharing

13:52:01 20    videos of me as a little girl being raped in the most

21    sadistic ways.  They don't know me.  They've never seen --

22    they have seen every part of me.  They are being entertained

23    by my shame and pain.  The world came crashing down the day

24    I learned pictures of me being sexually abused had been

13:52:20 25    circulated on the internet.  Since then, little has changed

1    except my understanding of the distribution of these

2    pictures grows bigger and bigger by the day.  I've always

3    been told there's nothing I can do about it.  The enormity

4    of this has added to my grief and pain and given me

13:52:35  5    paranoia.

6          And she goes on and talks about and page -- paragraph

7    after paragraph what this has done to her.  She said --

8    she's paranoid she claims.  She says:  Some of the perverts

9    have contacted me.  I've received emails suggesting making

13:52:50 10    porn with these strangers.  One has stalked me and others

11    have created slideshows and videos of me on YouTube

12    referencing my life as an adult in recently as last year.

13    And it goes on and on.  There's more paragraphs talking

14    about the difficulties this individual has had.

13:53:08 15          This is one of the persons that Mr. Glowacki

16    victimized.  So I think it's important to understand when we

17    talk about these cases -- I receive all sorts of materials

18    here in support of the defendant referencing his illness or

19    his need for counseling, et cetera, focusing on the

13:53:26 20    defendant.  Far too often we don't focus on the victim.

21    That's where the real focus needs to be here, the victim,

22    and what we can do to prevent Mr. Glowacki from this

23    continued pattern.

24          There were victims in his earlier case for which he

13:53:41 25    received two years of probation.  I don't know Judge

1    McGinty, but I hope someone goes back to him and explains to

2    him and shows him the seriousness of these kind of offenders

3    and this kind of conduct and the danger he's posed

4    particularly with someone whose own report indicates he's at

13:53:58  5    a high-risk of offending.  Within six months of probation,

6    he's back doing this on the dark web and in a sophisticated

7    way.

8         That's why I pause and wonder:  Is 15 years going to

9    be enough?  If someone's placed on probation, after all of

13:54:14  10   the 14 counts to which he was given probation, and then in a

11   matter of six months he goes back in a sophisticated way to

12   go back to feed his urges, is 15 years enough?  Is it going

13   to be an adequate deterrent?  Is he going to, once he's

14   released, return to the same urges that he was again

13:54:34  15   obviously involved in here?

16        And this is a person who supposedly is going through

17   counseling at the same time.  One would suspect he's telling

18   his counselors:  Oh, I'm doing well, I'm doing fine, what

19   have you.  Misleading his counselors.  So I ask:  Was 15

13:54:52  20   years going to do it?  Is that going to be enough or not?

21   Rhetorically.

22        Well, hear the following:  Pursuant to the Sentencing

23   Reform Act of 1984, 18 United States Code 3553(a), the

24   defendant will be committed to the custody of the Bureau of

13:55:17  25   Prisons for a term of 180 months.

1      He'll be placed on supervised release for a term of 15

2   years.  Why?  10 years is not sufficient.  15 years may not

3   be sufficient.  He may have this issue or may deal with this

4   issue for a lifetime.  The reason why 15 years is

13:55:34  5   appropriate is because of his recidivism:  The fact he

6   returned to this same type of criminal conduct that brought

7   him before the state court in a matter of a very few, short

8   months, he's a high-risk offender, he'll require supervision

9   for many, many, many years.

13:55:49 10      In terms of the special assessment -- or supervised

11   release, when he's released, he'll be required to report in

12   person to the district in which he's released.

13      There will be no fine.  It's because there will be

14   restitution.

13:56:03 15      Special assessment of $100 is due immediately.

16      I will order restitution in the amount of $10,000

17   through Lily -- to Lily through the Clerk of the U.S.

18   District Court.  And I believe that, again, that amount is a

19   conservative amount, and I would point any reviewing court

13:56:20 20   to the victim impact statement, the amounts of damages the

21   victim suffered.  Candidly, I don't know how we ever can

22   place a number on the kind of harm to this victim.  It's

23   difficult to quantify.

24      And for this defendant, $10,000 is indeed in my view

13:56:35 25   nominal.  This is a person who's willing to spend

1    substantial sums to purchase pictures of Lily, but yet, in

2    some ways is resistant to paying restitution to her.

3         He'll pay 25 percent of his gross monthly income per

4    month through the Federal Bureau of Prisons Inmate Financial

13:56:54  5    Responsibility Program while he's in custody.  The address

6    to where the restitution will be paid will be part of the

7    Court's order.

8         When he's released from prison, if any restitution

9    remains, he'll begin paying at ten percent of his gross

13:57:08 10    monthly income no later than 60 days after he's released

11    from prison.

12         And, of course, the Government can execute upon the

13    judgment.

14         When he's under supervision, he'll undergo mandatory

13:57:20 15    and standard conditions adopted by the Court.  There will be

16    mandatory drug testing to make sure he's not using any

17    illegal drugs, substances.  There will be a mental health

18    evaluation that will be required.

19         We do have the records that were submitted by counsel

13:57:34 20    on behalf of the defendant.  We'll make sure they're made

21    part of the record in this case so that, again, they can be

22    utilized in the future by Probation.  I'll note that even

23    his most recent report, which was an attempt, again, in many

24    ways to minimize the problems of the defendant, even that

13:57:53 25    report notes an above-average risk of recidivism and that

1    Mr. Glowacki would highly benefit from treatment and goes on

2    to say that.  That's to state the obvious.  And so, in any

3    event, we'll note that and make that all part of the record

4    for the -- again, for future use during his supervision.

13:58:12  5    He'll be subject to a search.  His person, property,

6    house, residence, vehicle, papers, computers, other

7    electronic communications, data storage devices, or media

8    will be subject to a search conducted by his probation

9    officer.  If he fails to submit to that search, that may be

13:58:29 10    grounds for revocation.

11    He must participate in sex offense specific

12    assessment.  He'll register under the SORNA, so-called SORNA

13    Act, Sex Offender Registration and Notification Act.  He

14    must comply with the requirements of that act as directed by

13:58:45 15    his pretrial services and probation officer.

16    And you will keep your registration current in each

17    jurisdiction in which you reside or are employed or are a

18    student.  And you must no later than three business days

19    after each change in name, residence, employment, or student

13:58:59 20    status appear in person in at least one jurisdiction in

21    which you are registered, inform that jurisdiction of all

22    changes in reporting information.  Failure to do so may be a

23    violation of your conditions of supervised release.  It may

24    be a federal offense punishable up to ten years if you fail

13:59:17 25    to register.

1        And he'll participate obviously in a sex offense

2  treatment program and follow the rules of that program.

3  He'll submit to periodic polygraph testing at the discretion

4  of the probation officer as a means of ensuring compliance

13:59:30  5  with the requirements of the supervision of the treatment

6  program.

7        He'll not possess any materials, including pictures,

8  photographs, books, writings, drawings, videos, video games

9  depicting or describing sexually explicit conduct, which is

13:59:43 10  defined as (A) sexual intercourse, including genital to

11  genital, oral to genital, anal to genital, or oral to anal,

12  whether between persons of the same or opposite sex,

13  bestiality, masturbation, sadistic/masochistic abuse, or

14  lascivious exhibition or -- of the private areas of any

14:00:03 15  person.

16        There will be an internet computer restriction.  He'll

17  be prohibited strictly from accessing any computer, online

18  computer service, internet service provider, bulletin board

19  system, or any other public or private computer network or

14:00:17 20  the service at any location, including employment or

21  education, without prior written approval of his probation

22  officer and his pretrial officer.

23        And he'll provide his pretrial officer with accurate

24  information about his entire system, computer, all

14:00:31 25  passwords, et cetera, and his computer will be monitored and

1   restricted.

2          And he will consent to unannounced examinations of his

3   computer system, which may include retrieval and copying of

4   all memory from hardware, software, removal from such

14:00:47  5   system, et cetera, and he'll consent to monitoring being

6   installed on his computer.

7          Minor contact restriction.  He must not seek, obtain,

8   or maintain any residence, employment, volunteer work,

9   church, or recreational activities involving minors, persons

14:01:04 10   under the age of 18, in any way without the prior express

11   written approval of your probation officer.

12          And you'll not reside within the direct view of any

13   schoolyards, parks, public swimming pools, playgrounds,

14   youth centers, video arcade facilities, any other places

14:01:18 15   used by persons under the age of 18.  You must not reside

16   within a thousand feet of a school or daycare center without

17   the express written approval of your probation officer.

18          There will be no sex paraphernalia permitted.  You'll

19   not possess any such items as described:  Bindings,

14:01:35 20   blindfolds, restraints, handcuffs, anything sadomasochistic.

21          And you'll have no contact whatsoever with this

22   individual named Lily, either directly or through someone

23   else, and if you do, then obviously you will face another

24   sanction.

14:01:51 25          And he's not a candidate for bond, of course, based on

1    this conduct and this history.

2         Having said all those things, counsel for the

3    Government, under *U.S. versus Bostic*, any objections,

4    corrections, any arguments that have not been previously

14:02:05 5    raised that I can address?

6                        MR. SULLIVAN:  No, Your Honor.

7                        THE COURT:  Thank you.

8         Counsel for the defendant, any *Bostic* objections you'd

9    like to raise?

14:02:12 10                       MR. NEMECEK:  No, Your Honor.

11                       THE COURT:  Thank you.

12        Mr. Glowacki, I've imposed a sentence within the terms

13    of your plea agreement.  It doesn't appear there's any basis

14    for an appeal.  You can talk that over, however, with your

14:02:23 15    lawyer.

16        If there is any basis for an appeal, any notice of

17    appeal must be filed no later than 14 days after I reduce

18    your sentence to writing.

19        And if you're unable to pay for an attorney or afford

14:02:35 20    counsel, we'll appoint an attorney for you and provide you

21    all the necessary papers and transcripts, et cetera.

22        Is that understood?

23                        THE DEFENDANT:  Yes, it is, Your Honor.

24                        THE COURT:  All right.  Thank you very much.

14:02:45 25    That will be the Court's --

42

```
 1              MR. NEMECEK:  Your Honor --

 2              COURTROOM DEPUTY:  Just --

 3              MR. NEMECEK:  I apologize.  Just one more

 4    point.

14:02:50  5        We had made a request in the sentencing memo for the

 6    Court to put in a designation request for FCI Elkton, just

 7    because it's in close proximity to his home and they also

 8    offer the nonresidential sex offender treatment program

 9    there.

14:03:02 10              THE COURT:  All right.  I'm sorry, sir.  I

11    meant to do that.  And I will certainly make that

12    recommendation.  My apologies.

13              MR. NEMECEK:  No, that's fine.

14        Thank you, Your Honor.

14:03:09 15              THE COURT:  We'll make sure -- no, I

16    understand.  That's an important recommendation.  We will

17    make it.

18        All right.  Thank you very much.

19              COURTROOM DEPUTY:  Judge, the Government did

14:03:16 20    not dismiss their counts.

21              MR. SULLIVAN:  Yeah, I think there were -- the

22    Count 2, we'll make a motion to dismiss Count 2, Judge.

23              THE COURT:  Will be dismissed at your request

24    pursuant to the plea agreement.

14:03:27 25              MR. SULLIVAN:  Thank you.
```

1          THE COURT:  Thank you, everyone.

2      Appreciate it.

3                    - - -

4          (Proceedings concluded at 2:03 p.m.)

14:03:45  5

6

7

8                **C E R T I F I C A T E**

9          I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
10   prepared from my stenotype notes.

11          */s/ Sarah E. Nageotte*          *6/16/2022*
          SARAH E. NAGEOTTE, RDR, CRR, CRC          DATE

12

13

14

15

16

17

18

19

20

21

22

23

24

25